# New York, Chicago & St. Louis Railroad Company *v.* Martin.

[No. 4,971. Filed December 14, 1904. Rehearing denied April 4, 1905. Transfer denied June 9, 1905.]

Railroads.—*Highway Crossings.*—*Failure to Give Signals.*—*To Whom Liable.*—Under §§5307, 5308 Burns 1901, §§4020, 4021 R. S. 1881, providing that it shall be the duty of all railroad companies in this State to sound the locomotive whistle and ring the bell at a certain distance before crossing a public highway and for failure thereof be liable for all damages caused thereby, a railroad company is not liable to a person using a highway adjoining the railroad track, but who was not intending actually to cross the railroad track.

From Fulton Circuit Court; *Harry Bernetha,* Judge.

Action by Mary A. Martin against the New York, Chicago & St. Louis Railroad Company. From a judgment on a verdict for plaintiff for $3,500, defendant appeals. *Reversed.*

*Walter Olds, N. D. Doughman* and *John H. Clarke,* for appellant.

*Lairy & Mahoney, I. Conner* and *M. Winfield,* for appellee.

Black, J.—This cause was commenced in the Marshall Circuit Court, from which the venue was changed to the court below. The appellee, Mary A. Martin, sued the appellant to recover damages for a personal injury. A demurrer to the complaint for want of sufficient facts was overruled. In the complaint, after preliminary matter, it was alleged, in substance, that the appellant's railroad passed through the county of Marshall and the town of Argos, in that county; that about one-half mile east of the town a public highway, running north and south, intersected and crossed the track of the appellant; that as this highway approached the right of way, another highway connected with the former highway and ran thence east; that it inter-

sected with the north-and-south highway at a point immediately north of the railway track and within fourteen and one-half feet from the center of the track, and extended thence east almost parallel with the railroad track and in close proximity to it; that the appellee was a farmer's wife, and lived with her husband about five miles east of Argos, which was her market town, and she frequently was required to go to the town with horse and buggy, and her nearest and best route, which she always traveled, was along the highway aforesaid; that just east of the point where the east-and-west highway connected with the north-and-south highway there was a deep cut, made by the appellant for its track, through which the trains passed going east and west; that the north-and-south highway, as it approached the appellant's track, was on low ground, and the ground east thereof and toward the appellant's track rose, and, because of this elevation and the cut and intervening obstructions of fences and trees, it was impossible, for a person approaching the track, to see a train coming west into the cut; that May 5, 1900, the appellee had driven with a horse and buggy to Argos, and, after attending to her business, she started to drive home, and drove south on the north-and-south highway, intending to turn, north of the crossing, onto the highway east, her usual route to her home, and, when within about sixty feet of the east-and-west highway, she stopped her horse and looked and listened for approaching trains; that she did not want to risk driving her horse on the east highway, which at that point was along the north side of appellant's right of way, if a train was approaching; that, hearing and seeing no train approaching, she started her horse forward, and, just as she reached the intersection of the two highways and was turning east, a train of cars propelled by a steam locomotive came out of the cut from the east, and by reason of its proximity her horse became frightened, and ran and threw the appellee out of the buggy with great force and violence upon the ground, whereby, etc. (describing her in-

jury); that the appellant's agents and servants in charge of and operating the train were careless and negligent, in that no whistle was sounded, no bell was rung, nor was there any other warning given of the approach of the train; that the appellant's agents and servants in charge of the train did not sound the whistle for the highway crossing at all, nor did they ring the bell; that, had the whistle been sounded at any point not more than one hundred rods nor less than eighty rods east of the highway crossing, and had the bell been rung continuously from such point of sounding the whistle until the engine had entirely crossed the highway, the appellee would have heard the same, and would not have approached within dangerous proximity to the railroad, and would have avoided the injury; that she was induced to approach the railway, and drive her horse into a place where he afterward so became frightened, solely by reason of the negligent failure on the part of the appellant and its agents and servants to ring the bell and sound the whistle as aforesaid; and that she was injured as before described solely by reason of the fault and negligence of the appellant in failing to ring the bell and sound the whistle as aforesaid. Wherefore, etc.

The complaint does not proceed upon the theory that the appellee's horse was frightened by any unusual or unnecessary appearance or noise, or any negligent or wilful act or omission in connection with the operation of the train; but it relies upon the assumed liability of the appellant for failure to give the statutory signals at the time and the place prescribed by the statute, whereby the appellee was without warning of the approach of the train, and was induced to drive into dangerous proximity to the approaching train, whereas otherwise she would not have gone to such place, and would not have been injured. There are some allegations, concerning the physical surroundings, inserted to show want of contributory fault on the part of the appellee, while the only negligence attributed to the appellant as the

cause of the injury, without which it would not have occurred, is the violation of the duty imposed by the statute providing for the signaling of the train's approach to the crossing of the railroad track on the north-and-south public highway. There was no collision of the train with the appellee or her horse or buggy. She was not traveling toward the railroad crossing with a purpose to cross the railroad track, but, having come from the north, she was purposely turning from the north-and-south highway into the east-and-west highway, north of the crossing, with the purpose of pursuing her journey along the latter road eastward and nearly parallel with the railroad, when her horse took fright at the train approaching the crossing from the east.

No question is presented as to the failure of the appellant to perform a duty at common law toward the appellee, but the only question is whether or not the appellant owed her the duty to give the signals prescribed by statute of the approach of the train to the crossing. It is claimed on behalf of the appellant that the statutory signals required of railroad companies in sounding of whistle and ringing of bell on approaching highway crossings are for the benefit of persons about to use, using, or having lately used the crossing, and not for the benefit of persons traveling upon public highways parallel with the railroad tracks, or working in fields, and who are not crossing or intending to cross the railroad tracks on the highway. On the other hand, it is claimed on behalf of appellee that the act of the legislature requiring railroad companies, when approaching a highway crossing with their trains, to sound the whistle and to ring the bell, is intended for the protection of persons and their property, whether they intend to cross or not, and that its language is broad enough to apply to persons who may be at or near the crossing with teams.

Our statute provides: "It shall be the duty of all railroad companies operating in this State to have attached to each and every locomotive engine a whistle and a bell, such

as are now in use or may be hereafter used by all well-managed railroad companies; and the engineer or other person in charge of or operating such engine upon the line of any such railroad shall, when such engine approaches the crossing of any turnpike or other public highway in this State, and when such engine is not less than eighty nor more than one hundred rods from such crossing, sound the whistle on such engine distinctly three times and ring the bell attached to such engine continuously from the time of sounding such whistle until such engine shall have fully passed such crossing," etc. §5307 Burns 1901, §4020 R. S. 1881. It is further provided, in §5308 Burns 1901, §4021 R. S. 1881, that the company in whose employ the engineer or other person in charge of or operating any such engine may be, who shall fail or neglect to comply with the provisions of the preceding section, as well as the person himself so failing or neglecting, "shall be liable in damages to any person or his representatives who may be injured in property or person, or to any corporation that may be injured in property, by the neglect or failure of such engineer or other person as aforesaid." The statute can not be invoked in favor of the appellee, unless it may properly be said to be within the intention of the legislature to create a legal duty on the part of the railroad company to give warning as indicated in the statute to such a traveler.

A railroad company, unless specially otherwise required by statute, is entitled to operate its railroad, in such a locality, in the usual manner, without thereby becoming liable to travelers upon highways running parallel with the railroad, or in the neighborhood thereof, and is only liable, if at all, for injuries to such travelers through unusual or unnecessary causes attributable to negligence or wilfulness. This is necessarily included within the privileges conferred by the granting of a franchise to construct and operate a railroad in such localities. Highway crossings over railroad tracks have

ever been regarded by the courts as dangerous places, to the use of which both the railroad company and travelers on the highway are entitled; such precedence being allowed to the railroad company as the nature of its business and the necessary means of conducting it require; the company being obliged, in the absence of statutes prescribing signals, to observe the right of travelers upon the highway so far as to give such warnings as the circumstances reasonably require. Because, however, of the great danger of injuries to persons and property at grade crossings, and the manifest need, therefore, of giving warnings of the approach of trains, without reference to the judgment or discretion of the railway employes in charge of locomotive engines, the legislature prescribed the minimum warnings by means of whistle and bell. The requirement has express reference to the highway crossings, and designates distances therefrom at which the whistle must be sounded, and at which the ringing of the bell must be commenced, to be continued until the highway has been crossed. The signals are to be given when the engine "approaches the crossing." It has been held, as within the remedy contemplated, that the statute is available for the protection of travelers not only when on the railroad at the crossing, but also when approaching for the purpose of crossing, and in some cases the statute has been applied when the injuries occurred immediately after crossing. It may be available to passengers on the railway trains.

It is plainly not for the benefit of trespassers upon the railway track, however beneficial the warnings might be to such persons. Nor is it within the intent of the legislature to create, by such requirements, a duty of the railroad company toward persons at work with animals in adjoining fields, or persons traveling upon highways near the railroad, not purposing to go upon the crossing; and it is manifest that for persons so situated such noises frequently or ordinarily would not conduce to safety, but, so far as they would produce any effect, would tend to contribute to danger.

The appellee did not at any time intend to cross the railroad, but when her horse became frightened she was turning from the road which led to the crossing, and was pursuing her course eastward on the connecting highway running parallel with the railroad. It can not be said that she was more in need of warning or more entitled to it there than she would have been at a point one hundred or two hundred feet eastward upon the parallel road; and, unless the statute would have been available in her behalf. if the horse's fright at the train had occurred at some such distance east of the place at which it did occur, it is impossible to make it available under the circumstances of her case.

Looking to the manifest intention of the legislature, as indicated by the language employed in the statute, and as suggested by the nature of the remedy which was contemplated, we can not conclude that the appellant owed the appellee a legal duty to give the statutory warnings of the approach of the train to the crossing. The general language which we have quoted from §5308 Burns 1901, §4021 R. S. 1881, providing for damages to any person or his representatives who may be injured in property or person "by the neglect or failure of such engineer or other person as aforesaid," is much pressed upon our attention on behalf of the appellee. We can not regard this provision as a modification of the remedial purpose of the legislature in the preceding section, or as extending or enlarging the duty thereby created. It is the neglect or failure to perform the duty enjoined in the preceding section which will render the company liable for damages, and if it can not be said to have been intended in the preceding section to create a duty toward a person in the appellee's circumstances, the person so situated can not be treated as within the protection of the statute.

The decisions in different jurisdictions construing and applying similar statutory provisions have not been uniform, but the conclusion at which we have arrived seems to

be in accord with the weight and tendency of authorities. See *East Tenn., etc., R. Co.* v. *Feathers* (1882), 10 Lea 103, 15 Am. and Eng. R. R. Cas. 446; *Melton* v. *St. Louis, etc., R. Co.* (1903), 99 Mo. App. 282, 73 S. W. 231; *Reynolds* v. *Great Northern R. Co.* (1895), 69 Fed. 808, 29 L. R. A. 695; *Toomey* v. *Southern Pac. R. Co.* (1890), 86 Cal. 374, 24 Pac. 1074, 10 L. R. A. 139; *Spicer* v. *Chesapeake, etc., R. Co.* (1890), 34 W. Va. 514, 12 S. E. 553, 11 L. R. A. 385; *Williams* v. *Chicago, etc., R. Co.* (1891), 135 Ill. 491, 26 N. E. 661, 11 L. R. A. 352, 25 Am. St. 397; *Maney* v. *Chicago, etc., R. Co.* (1892), 49 Ill. App. 105; *Louisville, etc., R. Co.* v. *Lee* (1893), 47 Ill. App. 384; *Williams* v. *Chicago, etc., R. Co.* (1890), 32 Ill. App. 339; *Clark* v. *Missouri Pac. R. Co.* (1886), 35 Kan. 350, 11 Pac. 134; *Louisville, etc., R. Co.* v. *Hall* (1888), 87 Ala. 708, 6 South. 277, 13 Am. St. 84, 4 L. R. A. 710. See, also, *Baltimore, etc., R. Co.* v. *Bradford* (1898), 20 Ind. App. 348, 67 Am. St. 252; *Leavitt* v. *Terre Haute, etc., R. Co.* (1892), 5 Ind. App. 513; *Lousiville, etc., R. Co.* v. *Schmidt* (1893), 134 Ind. 16; *Terre Haute, etc., R. Co.* v. *Brunker* (1891), 128 Ind. 542; *Pennsylvania Co.* v. *Fertig* (1905), 34 Ind. App. 459.

Judgment reversed, with instructions to sustain the demurrer to the complaint.