ARMSTRONG CORK COMPANY *v.* MAAR.

[No. 18,320. Filed March 23, 1953. Rehearing denied May 14, 1953. Petition to transfer dismissed November 18, 1953.]

108

*Arthur C. Van Duyn*, of Greenfield, *George C. Forrey, III, George N. Craig, Edward B. Raub, Jr., Jacob A. White*, and *White, Raub, Craig & Forrey*, all of Indianapolis, for appellant.

*Davis & Williams*, of Greenfield, for appellee.

KELLEY, J.—This is an action arising out of alleged negligence of appellant causing personal injuries to appellee. Verdict and judgment was for the appellee in the sum of $17,750.00.

Appellee brought the action by complaint filed on May 1, 1948, which alleged that on February 21, 1947, he was employed at his trade as a structural steel worker on a building then being constructed by the Eli Lilly Company in the city of Indianapolis. In addition to the appellant, said complaint named Claude Wilson and Freeman Herron as defendants and alleged that on said date they were employed by the appellant as hod carriers at said building, and that they were loading on an elevator cartons of a product of appellant known as Foam Glass. It is further averred that while

appellee was working on said building at a point below the platform of said elevator or hoist, the defendants started the same when it was loaded with "60-pound" boxes of said commodity and that when the hoist reached a point between two floors of the building, one of the boxes caught on a guard rail of the hoist and fell many feet, hitting the appellee on the head, inflicting upon him "permanent, serious, and painful injuries." The complaint charges appellant with six specifications of negligence lettered a. to f., inclusive.

Under instructions by the court, unobjected to, the issue of negligence averred in specifications a., c. and f. were withdrawn from the consideration of the jury, as was also rhetorical paragraph 3 of the complaint which charged that the "defendants *operated* and were in *control* of a certain elevator or hoist used in the erection of said building at said time and place." (Our emphasis.) Appellee made no objection to the withdrawal by the court of said issues from the jury and they will receive no further consideration. It is, however, appropriate at this point to say that specification b. charged that appellant negligently and carelessly *"placed said* elevator or *hoist into operation"* (our emphasis) before all of said cartons were within the floor space of the hoist, and appellant contends that said specification b. was withdrawn by the court's instruction No. 10 which was identical with instruction No. 9 requested by appellant and given by the court. Appellant had tendered its instruction No. 10, *which contained the exact wording of said specification b.* (our emphasis), and which would have withdrawn said issue from the jury. But the court refused to give said instruction No. 10 and, instead, gave appellant's said tendered instruction No. 9, *which contained the wording of said rhetorical paragraph 3* of appellee's com-

plaint. (Our emphasis.) Therefore, it is apparent that said specification b. remained an issue for consideration by the jury.

The charges of negligence in appellee's complaint which went to the jury are, in substance, that: b. The appellant negligently "placed said hoist into operation" before all of the cartons were within the floor space of the hoist and that one of the cartons was partly extending beyond the floor space; d. The appellant was negligent in failing to warn appellee "that a certain box was protruding and extending over the edge of the platform of the hoist or elevator and that said box might fall" on the appellee; and, e. The appellant was negligent in "failing to place a guard at the floor where said elevator or hoist left" to warn fellow workmen of existing danger. It is averred that appellants' negligence was the "direct cause" of appellee's injuries.

Before submission for trial, the action was dismissed as to the defendants Claude Wilson and Freeman Herron, and they will not be further noticed as parties to the action.

Appellant put the complaint at issue by an appropriate answer of admission and denial and a second paragraph of answer alleging in substance that at the time of his injuries appellee was employed by one Leslie Colvin and that his injuries were received "by an accident arising out of and in the course of his said employment"; that on March 18, 1947, an agreement as to compensation under the terms of the Indiana Workmen's Compensation law was filed with and approved by the Industrial Board and appellee "has accepted weekly benefits of compensation" and has received medical treatment under said agreement.

Appellee replied to said second paragraph of answer by denial thereof and by an amended second paragraph

of reply, alleging, in substance, that an agreement as to compensation was filed with and approved by the Industrial Board on March 18, 1947, but that "any and all sums of money received or obtained from plaintiff's employer since said time was by agreement and with the understanding that said payments were made as an advancement or loan to the plaintiff until his impairment was ascertained and he elected which remedy he would proceed upon" under the Workmen's Compensation Act.

At the close of plaintiff's evidence, appellant moved for a peremptory instruction, which was denied and appellant renewed its motion at the close of all the evidence, with the same result.

Appellant's motion for a new trial containing thirteen specifications was duly filed and overruled. This adverse ruling is the only error assigned for reversal.

The thirteen specifications for a new trial resolve themselves into three main inquiries which are, and will be disposed of in the order following, viz.: (1) Did the appellee make an election to accept compensation under the provisions of the Workmen's Compensation Act in effect on February 21, 1947, and thereby preclude his proceeding against appellant; (2) Was the verdict sustained by sufficient evidence; (3) Were the damages assessed by the jury excessive?

(1) Under the issues presented by the second paragraph of appellant's answer and the amended second paragraph of appellee's reply, the question of whether any benefits or money accepted by appellee from his employer or his insurer were received as compensation or as a loan became a question of fact for the jury. The jury, by its general verdict, found the issue in favor of appellee. The appellant challenges this finding by asserting error in the admis-

sion of certain documentary evidence over its objection, by asserting error in the refusal of the court to give appellant's tendered instruction No. 3, and by alleging insufficiency of the evidence to support the verdict and that it is contrary to law.

The appellant occupies the position of a third party tort-feasor which has inflicted injury upon an employee of another. That part of our Workmen's Compensation Law in effect on February 21, 1947, applicable to the aforementioned particular issue before the jury, is §40-1213, Burns' 1933, as amended by Acts 1945, ch. 188, §4, p. 580. It provides:

> "Whenever an injury or death, for which compensation is payable under this act, shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee . . . may claim compensation from the employer or proceed at law against such other person to recover damages or may proceed against the employer for compensation *and* against such other person . . . *at the same time* but he . . . shall *not collect* from both; . . .". (Our emphasis.)

Under said section of the Act and the amendment thereto it has been held that: (1) The purpose of the cited statute is to protect the employee and employer and not to protect or limit the liability of the negligent third person. *New York Central R. Co.* v. *Milhiser* (1952), 231 Ind. 180, 106 N. E. 2d 453; *Marion County Construction Co.* v. *Kimberlin* (1933), 96 Ind. App. 145, 150, 184 N. E. 574; *Schneider, Workmen's Compensation*, §§44-45; (2) that an employee may claim both an award of compensation against the employer and a judgment against the wrongdoer, and as long as there has been no col-

lection under either, there has been no election. *Rushville School Tp.* v. *Mock* (1927), 86 Ind. App. 307, 157 N. E. 366; (3) that the employee may obtain an award against the employer and also a judgment against the wrongdoer. *Marion County Construction Co.* v. *Kimberlin, supra;* (4) that the appellee and his employer had a right to enter into an agreement concerning compensation, and to have the same approved by the Industrial Board without affecting appellee's right to sue for and collect damages from appellant. *Pittsburgh, etc. R. Co.* v. *Keith* (1925), 89 Ind. App. 233, 241, 146 N. E. 872; (5) the mere fact that an agreement for compensation has been made between an employee and employer does not itself indicate that the employee has elected his remedy. *Samuel E. Pentecost Const. Co.* v. *O'Donnell* (1942), 112 Ind. App. 47, 67, 39 N. E. 2d 812; (6) Agreements between the employer and employee in no way affect the liability of the wrongdoer, so long as there has been no actual payment and satisfaction of the claim asserted. *Weis* v. *Wakefield* (1941), 111 Ind. App. 106, 118, 38 N. E. 2d 303. And (7) Retention of medical and hospital expenses does not constitute an election by the claimant to accept the remedies afforded under the compensation act. *Weis* v. *Wakefield, supra.*

It thus becomes readily apparent that under said issue appellant assumed the burden of proof that appellee had "accepted weekly benefits of compensation" and the mere showing that a compensation agreement had been entered into by appellee, his employer, and the insurer would not, of itself, suffice to establish the alleged fact. *Samuel E. Pentecost Const. Co.* v. *O'Donnell* (1942), 112 Ind. App. 47, 67, 39 N. E. 2d 812, 820. The appellant, to sustain his affirmative answer, put into evidence copies of cer-

tain proceedings before the Industrial Board, including the compensation agreement of March 18, 1947, referred to in the answer and reply, and appellee's application for ". . . adjustment of claim for compensation" wherein appellee stated that "payment, allowance or benefit" of $20.08 per week for 50 weeks had been received from the employer and claiming additional money for medical services and 500 weeks additional compensation. On appellant's side there is also some testimony by the claim's manager of the insurance carrier to the effect that he had no knowledge of a loan agreement prior to 1949 and that he didn't know whether Given, an adjuster for the carrier, had represented to appellee that the settlement would be a loan.

To sustain the allegations of his reply, appellee testified that some four or five weeks after the accident the insurance adjuster, Given, had told him, in connection with the claim of appellee, in substance, that "we will see that you get the money and make that as a loan for you to help you out," and there is further evidence to the same effect.

Appellee also offered into evidence certain documents, identified as Exhibits 12, 13, 15, 16 and 31. These exhibits, with the exception of No. 16, collectively purported to show certain proceedings before the Industrial Board, taken subsequent to the date appellee filed his complaint, resulting in an award of the Industrial Board setting aside the aforementioned compensation agreement of March 18, 1947. Exhibit No. 16 purports to be a loan agreement between appellee and his employer whereby appellee agrees to reimburse the employer for the advancement and loan. Appellant's objections to the admission of these exhibits into evidence were overruled by the

court and such action is claimed as error by appellant in his motion for a new trial. The basis of appellant's objections were, in substance, that the proceedings were taken subsequent to the filing of the complaint and constituted a "departure," that appellant was not a party thereto and was not bound thereby, and that the facts stated in the exhibits "are not proof of the facts." In connection with the admission into evidence of said exhibits, appellant tendered and the court gave to the jury the following instruction:

"Instruction No. 12

"There have been introduced into evidence certain papers marked Plaintiff's Exhibits 12, 13, 15, 16, 31 and 46. The Court instructs you that none of the facts stated in any of these exhibits is evidence of the existence of such facts. The Court admitted these exhibits merely to let it be shown what was done by the plaintiff and his employer and his employer's insurance company before the Industrial Board."

No other evidence was offered or admitted on the matters exemplified by these exhibits. Therefore, under appellant's own Instruction No. 12, said exhibits had no probative value to the jury. If the exhibits were not proof of the facts contained therein, then no evidence of such facts went to the jury from any source. Consequently, appellant could not have been in any way harmed thereby. Their admission was for all practical purposes an idle ceremony. Appellant, having occasioned this unfortunate situation by its own instruction, thereby waived its objections to said exhibits. *Oglebay* v. *Tippecanoe Loan Co.* (1907), 41 Ind. App. 481, 485, 82 N. E. 494.

There was evidence of probative value which went to the jury on the question of whether the money re-

ceived by appellee was received as a loan or as compensation benefits, and from which evidence the jury could draw reasonable inferences, and, even if the evidence be considered such that reasonable men could form different conclusions therefrom, yet, it is neither our prerogative nor privilege to substitute our judgment for that of the jury. On this issue the jury, by its verdict, found for the appellee and we perceive not wherein such verdict was contrary to law.

The remaining error claimed by appellant on this phase of the case is that the court erred in refusing to give appellant's tendered Instruction No. 3. Said instruction is as follows:

"Instruction No. 3

"I instruct you that this action was commenced on May 1, 1948, and that if you should find that on said date there was in existence a workmen's compensation agreement approved by the Indiana Industrial Board under which the plaintiff had accepted workmen's compensation benefits, then your verdict should be for the defendants."

There was no error in refusing this instruction. Instruction No. 3 asked by appellant is fully covered by the court's Instruction No. 1. There is no error in the refusal of the court to give to the jury an instruction tendered by a party, where the substance thereof is included in the instructions given. *The Indianapolis and St. Louis R. R. Co.* v. *Stout, Admr.* (1876), 53 Ind. 143; *Union Traction Co. of Ind.* v. *Schuster* (1924), 81 Ind. App. 548, 144 N. E. 246. The cases supporting this rule are too numerous for citation.

(2) We next consider the specification of appellant's motion for a new trial which asserts that the verdict is not sustained by sufficient evidence. Under this heading we will also consider the specification of

said motion charging that the verdict is contrary to law; the specifications which allege error in the court in refusing to give appellant's tendered instructions numbered 1, 7 and 10, respectively; and the specifications which charge error in overruling appellant's motion for a directed verdict at the close of all the evidence and in refusing to give appellant's Instruction "B" tendered with said motion to direct.

Instruction No. 1 tendered by appellant and refused by the court would have withdrawn from the jury Specification e. of appellee's complaint charging appellant with negligence "in failing to place a guard at the floor where said elevator or hoist left to warn fellow workmen of the danger that existed." Tendered Instruction No. 7, refused by the court, undertook to withdraw from consideration of the jury, Specification d. of appellee's complaint, charging appellant with negligence "in failing to warn the plaintiff that a certain box was protruding and extending over the edge of the platform of the hoist or elevator and that said box might fall on the plaintiff." And tendered Instruction No. 10, refused by the court, sought to withdraw from consideration by the jury Specification b. in appellee's complaint which alleged that appellant "negligently and carelessly placed said elevator or hoist into operation before all of the said cartons were placed within the floor space of the hoist . . . and one of the cartons was partly extending beyond said floor space . . .".

Any error of the court in refusing to give said tendered Instructions Nos. 1, 7 and 10 is dependent upon whether there was evidence of probative value which went to the jury on the issue of negligence as charged in specifications lettered b., d. and e. of the complaint. Appellant did not challenge the

propriety of said charges of negligence as a matter of pleading. Nor did appellant submit or request the submission of any interrogatories to the jury. Therefore, if the evidence supported said charges of negligence, the refusal to give said tendered instructions was not error.

We embark upon a review of the evidence on the charges of negligence impressed and guided by certain established rules, viz.: that on appeal we will not weigh conflicting evidence; only the evidence most favorable to the appellee will be considered by us; if there is some evidence, or reasonable inference that may be drawn therefrom, to sustain each material element essential to recovery, we must affirm the judgment; and our examination is bent mainly to ascertain whether at any point there is an entire lack of evidence to support the jury's finding.

There is evidence and reasonable inferences that may be drawn from the evidence that the appellee, a man in his early sixties, was an employee of one Leslie Colvin, who held a construction contract for the erection of a four-story building for the Eli Lilly Company in the city of Indianapolis, and on February 21, 1947 was engaged, as such employee, in the performance of his work as an ornamental structural steel worker on said building; that the appellant then had in its employ as hod carriers on said building two men known as Claude Wilson and Freeman Herron. At one side of said building, and some three feet outward therefrom, there was built a square wooden tower extending from the ground up to the fourth floor of the building and within the tower enclosure there was a platform approximately four feet square which was hoisted up and down within the tower frame by means of pulleys and a cable which was attached to a

steam-powered rig or machine located in a wooden shanty some twenty feet away from the tower. This rig or machine within the shanty was operated by one Harve S. Young, who raised or lowered the hoist upon receiving arranged bell signals given by the users of the hoist. There was evidence, that at the time of the accident giving rise to this action, Young was in the employ of appellant. The frame work of the tower was held together by cross-braces and there was a clearance of about four inches all around between the cross-braces of the tower frame and the outer edge of the platform.

Appellant furnished insulation material known as Foam Glass for use on said building. Said Foam Glass came enclosed in cardboard cartons weighing approximately 35 pounds each. On the day of the accident said employees of appellant, at about the noon hour period, stacked or loaded some of said cartons of Foam Glass on said hoist so that the same could be lifted up to the place where needed, and some of the cartons protruded out past the edge of the floor or platform of the hoist; the attention of said employees was called to the protruding cartons by Brewer Gill, who was also an employee at work on said building and he requested them to straighten up the cartons; the time of such notification concerning the protruding cartons was fixed by the evidence at five minutes of twelve noon and the accident occurred close to the noon hour; appellant placed no guards at the foot or bottom of the tower nor did it warn appellee of possible danger. The appellee and a fellow worker were carrying a steel beam for use in the building which they had picked up at a short distance from the building, and when appellee, who was at the forward end of the beam, reached a point some six or eight feet from the hoist, "something

popped" and one of the boxes or cartons of Foam Glass which was then being lifted up on the hoist fell off, hit the appellee and rendered him unconscious. The popping noise was made by a cross-brace that had been broken. Such evidence and the inferences permissible therefrom was sufficient to show negligence on the part of the appellant, and by its general verdict, the jury so found.

Appellant contends, however, that "If Gill did see some of the boxes protruding and did have the conversation with Wilson and Herron, there is no showing that Wilson and Herron did not straighten up the boxes," and calls attention to the five minute interval between the time Gill saw the protruding cartons and the time of the accident. The absence of any showing as to what Wilson and Herron did after their attention was called to the protruding cartons is the fault of the appellant, not the appellee. There is evidence that the load which Gill saw and warned about was the only load taken up during the five minute interval, and when appellee had carried his onus of proof down to the point of establishing that the cartons protruded and warning thereof was given appellant, it then became the duty of appellant to go forward with the evidence to meet the evidence produced by the appellee. The jury could infer, and from the verdict it appears that it did so infer, that the load went up with protruding cartons. On this issue in the cause, appellee had made his prima facie case and the burden of explanation or establishing that Wilson and Herron did straighten up the cartons so that they no longer protruded over the edge of the platform, shifted to appellant. "The burden of showing negligence is on the plaintiff and it never shifts, but the duty of proceeding with the evidence may shift

from side to side as one or the other of the parties makes out a prima facie case." *Belt Railroad and Stockyards Company* v. *McClain* (1914), 58 Ind. App. 171, 178, 106 N. E. 742; *The Cleveland, Columbus, Cincinnati and Indianapolis R. R. Co.* v. *Newell* (1885), 104 Ind. 264, 3 N. E. 836; *North* v. *Jones* (1912), 53 Ind. App. 203, 212, 100 N. E. 84, 20 Am. Jur. 134, §132, note 2.

Appellant further advances a contention of unexplainable accident. Appellant says: "There are several possible explanations of this accident. Wilson and Herron could have negligently stacked the material on the platform so that a box protruded over the edge, struck the cross member of the frame of the hoist, causing the box to tip over and the cross member to break. This is not shown to have been the case by the evidence." Then appellant proceeds to outline several possibilities as to how the accident could have occurred and cites the case of *Prest-O-Lite Company* v. *Skeel* (1914), 182 Ind. 593, 599, 106 N. E. 365, 367, 368, wherein it is held that "where an event takes place *the real cause of which cannot be traced, or is at least not apparent,* it ordinarily belongs to that class of occurrences which are designated as purely accidental; . . ." (Our emphasis.) Apparently appellant is laboring under a misconceived notion that since there is no direct evidence as to the exact happening which caused the box to fall, that is, whether it caught on to a cross-brace, or whether the stack of boxes tipped over, or whether the sudden drop and jerk of the platform, as was indicated in some portions of the evidence, loosened the box from the stack allowing it to fall, that, therefore, the occurrence was a pure accident for which appellant is under no legal obligation. The evidence in the case at bar repels any idea of an "acci-

dent" in the sense and application which appellant would attribute to it. Using the definition of the term as given in the Prest-O-Lite case cited by appellant and applying to it the said established facts of this case, it is readily apparent that what appellant seeks to impress upon us is that there is an absence of direct positive evidence to establish one factor in the chain of events which lead to appellee's injury, and, therefore, the "real cause" of the event "cannot be traced, or is at least not apparent." With this conclusion we can not agree. The question as to whether the facts of a particular case constitute an "accident" is one for the jury and, in the case at bar, the court, by its instruction No. 5, instructed the jury on that subject. The jury, by its general verdict, found against appellant on the question of appellee's injuries being the result of an accident. Appellant had knowledge of the protruding boxes and knew, or should have known from such knowledge, that the cartons might be knocked off by one of the cross-braces or might fall off from some other cause, yet appellant gave appellee no warning of danger and placed no guards at the foot of the tower to warn, of pending danger. Appellee's specifications of negligence included the failure to warn and place guards and the evidence supported such charges. Appellant had full and exclusive control of the instrumentality causing the accident, appellee was in a place where he had a right to be, appellant owed appellee a duty to exercise due care not to injure him, and the accident was such as would ordinarily not have occurred in the exercise of due care. Appellant created a condition of danger by a negligent act which was a substantial factor in producing a foreseeable injury upon appellee. *Swanson* v. *Slagal* (1937), 212 Ind. 394, 413, 8 N. E.

2d 993; *Citizens Telephone Co., et al* v. *Prickett* (1919), 189 Ind. 141, 154, 125 N. E. 193.

We conclude that under the evidence there was no error in the court's refusal to give appellant's tendered instructions numbered 1, 7, and 10.

The evidence was sufficient to sustain each material averment of the complaint as to negligence of the appellant and the court committed no error in overruling appellant's motion for a directed verdict at the close of all the evidence. It follows, also, that there was no error in the court's refusal to give appellant's Instruction "B" tendered with the motion for a directed verdict.

We find nothing which would render the verdict of the jury contrary to law.

(3) In its motion for a new trial, appellant asserts that the damages assessed are excessive.

We will not reverse judgments in tort actions, on the ground of excessive damages, unless the assessment is so large as to make it appear that the jury acted from prejudice, partiality, passion, or corruption. *Wabash R. Co.* v. *McDaniels* (1914), 183 Ind. 104, 113, 107 N. E. 291; *Creamery Package Manufacturing Co.* v. *Hotsenfiller* (1902), 159 Ind. 99, 105, 64 N. E. 600. The amount of recovery is a matter for the jury. *Wabash R. Co.* v. *McDaniels, supra.*

The evidence establishes that appellee was a man of some sixty-two years of age in excellent health with a life expectancy of 12.86 years; that his earnings from his work were in the neighborhood of $100.00 per week; that he was rendered unconscious for four hours from the blow on his head by the falling carton; that as a result of his injuries, he has suffered great pain; his faculty of memory is

impaired; the middle finger of his right hand was driven back into the socket; four of his ribs were broken; for a continuous period of over nine months he was compelled to be encased in a plaster cast extending from his neck to below his hips; he is compelled to wear a steel brace; he endures dizzy spells; the grip of his hands has been greatly diminished; he can no longer engage in his trade as a structural steel worker and works now as a watchman at $1.19 per hour; he was unable to work at all for one year and eight months following the accident; and he has suffered what has been described as a 52% permanent disability. The injuries to appellee were severe and we think the jury was impressed by such severity. We find nothing to indicate that the jury in awarding the damages was influenced by any passion, prejudice, partiality, or corruption.

We have given careful consideration to each of appellant's specifications of error and find no available error in the record. The judgment is, therefore, affirmed.

### ON PETITION FOR REHEARING

KELLEY, J.—Appellant petitions for rehearing specifying eight (8) contentions.

(1). Appellant suggests that the time of appellee's conversation with Given, the insurance adjuster, was the first week in March, 1947. The record may be somewhat confusing as to the exact circumstances. Appellee testified that he had a conversation about the matter four or five weeks after his injuries with a man whose name he did not then know. Later, in further testimony, it became apparent that the name of the insurance adjuster was "Given." However, we do not think the exact time is controlling. The basic question upon the issue was whether appellee had accepted

money as compensation benefits. Under the pleadings framing such issue, the burden was on the appellant to prove its allegation that the appellee "has accepted weekly benefits of compensation." The jury's verdict on the issue was adverse to appellant. The giving by the court of Instruction No. 13 did not alter the situation. With reference to that instruction, we again refer appellant to the holdings of our court in the cases of *Pittsburgh, etc. R. Co.* v. *Keith* and *Weis* v. *Wakefield,* cited in the main opinion.

Appellant says that we did not state what evidence we had in mind when we stated "and there is further evidence to the same effect." There was additional testimony given by the appellee which was of the same import as that quoted. Inferences could be also drawn from the testimony of Lawrence Shedd relative to Given's authority. Appellant apparently disregards the rule that on appeal we consider only the evidence most favorable to appellee.

(2). Appellant next says that we erred in "holding that there was no error in admitting into evidence appellee's Exhibits 12, 13, 15, 16, and 31." Apparently appellant has not thoroughly comprehended our opinion. We made no such holding. What we held was that said exhibits, admitted over the objection of appellant, had no probative value because the court gave appellant's tendered Instruction 12, which we set forth verbatim in the opinion. No other evidence was offered or admitted on the question. Further, by reason of such instruction given at appellant's behest, the latter waived its objections to the admission of the exhibits. *Oglebay* v. *Tippecanoe Loan Company* (1907), 41 Ind. App. 481, 485, 82 N. E. 494.

(3). It is said that we erred in holding that it was not error to refuse appellant's tendered Instruction

No. 3. We see no force in this contention. We have again reviewed the court's Instruction No. 1, in the light of appellant's urging in the rehearing petition, and adhere to our said ruling.

(4). Appellant avers that the "undisputed" evidence holds that Young was in the employ of Leslie Colvin and that we erred in holding that at the time of the accident he was in the employ of appellant. On page 189 of the transcript we find from the testimony of said Harve S. Young the following: Question: "Were you (Young) working there about 11:30 or 12:00 o'clock on that day?" Answer: "I was." Question: "And can you tell this jury at that time who you were employed by?" Answer: "Armstrong Cork Company." Evidence to the same effect was given by Young in other parts of his testimony. This does not indicate "undisputed" evidence that Young was employed by Colvin at the time of the accident.

(5). It is claimed that we erred "in failing to hold that the evidence concerning the protruding of the boxes is given solely as to the condition of the boxes when the hoist was at the ground level and that the "undisputed" evidence ". . . is that the hoist was in a stationary position at the second floor when boxes were loaded . . . ." We have reviewed the record and do not find any reason to change our opinion in this regard.

(6). (7). Appellant contends we erred in holding that it had full and exclusive control of the instrumentality causing the accident and that the "undisputed" evidence is that Leslie Colvin owned the hoist and operated it through his employee, Harve Young. We have again perused the record and adhere to our holding. The "undisputed" evidence is not such as appellant contends.

(8). Lastly, appellant says we erred in holding that the damages assessed by the jury are not excessive. We urge upon appellant a further perusal of the cases cited on the point in our opinion.

Petition for rehearing denied.

NOTE.—Reported in 111 N. E. 2d 82 and Rehearing denied in 112 N. E. 2d 240.