CHICAGO & CALUMET DISTRICT TRANSIT COMPANY, INC. *v.* STRAVATZAKES.

[No. 18,904. Filed March 9, 1959.]

*Owen W. Crumpacker, Theodore M. Gemberling, Lowell E. Enslen* and *Crumpacker, Gemberling & Enslen,* of Hammond, for appellant.

*Julius H. Sachs, Saul I. Ruman, Rudolph Tanasijevich, Sachs, Ruman & Tanasijevich,* of Hammond, *J. Edward Barce, John Barce* and *Barce & Barce,* of Kentland, for appellee.

MYERS, J.—This is an appeal from a judgment rendered in an action for personal injuries allegedly caused to appellee by the negligence of appellant's bus driver.

The complaint in general alleged that appellee was a paying passenger on appellant's bus; that while riding as such the bus driver approached a railroad crossing without stopping, as provided by statute, and at a dangerous and reckless rate of speed crossed the tracks with a "bump" which threw appellee from his seat

causing him to strike a handrail beside him, as a result of which he suffered personal injuries.

The issues were joined by appellant's answer denying the charges of negligence as set forth in appellee's complaint.

The cause was tried by a jury, which returned a verdict in favor of appellee in the sum of $21,500, upon which judgment was rendered together with costs.

A motion for new trial was filed by appellant, and upon its being overruled this appeal followed.

The only assignment of error by appellant is that the trial court erred in overruling appellant's motion for a new trial.

Appellant has set forth in its motion for a new trial eleven specifications which it claims constitute error. In its brief appellant has consolidated these into four specifications of error, which are as follows: (1) The verdict is not sustained by sufficient evidence, and thus the court should have sustained appellant's motion for a directed verdict; (2) the court erred in refusing to give appellant's Instruction No. 13; (3) the damages awarded by the jury are excessive; and (4) the court erred in overruling appellant's objections to the admission in evidence of certain hospital bills, and thus erred in refusing to give appellant's Instruction No. 6. These will be taken up in the order set forth above.

Appellant urges that the verdict is not sustained by sufficient evidence, and that therefore its motion for a directed verdict should have been sustained. It charges that the complaint alleges that appellant was guilty of only one act of negligence, being rhetorical paragraph 8, which reads as follows:

"8. That the driver of said bus negligently, carelessly, recklessly and unlawfully failed to bring his bus to a stop before starting over said railroad

tracks, as provided by statutes of the State of Indiana."

Appellant states that appellee relied solely on the contention that the driver violated a legal duty imposed on him by statute, being §47-2116, Burns' Ind. Stat., which reads as follows:

"(a) The driver of any motor vehicle carrying passengers for hire, or of any school bus carrying any school child, or of any vehicle carrying explosive substances or inflammable liquids as a cargo or part of a cargo, before crossing at grade any track or tracks of a railroad, shall stop such vehicle within fifty (50) feet, but not less than ten (10) feet, from the nearest rail of such railroad and while so stopped, shall listen through an open window or door and shall look in both directions along such track for any approaching train, and for signals indicating the approach of a train, except as hereinafter provided, and shall not proceed until he can do so safely. After stopping as required herein and upon proceeding when it is safe to do so, the driver of any said vehicle shall cross only in such gear of the vehicle that there will be no necessity for changing gears while traversing such crossing and the driver shall not shift gears while crossing the track or tracks.

"(b) No stop need be made at any such crossing where a police officer or a traffic control signal directs traffic to proceed.

"(c) This section shall not apply at street railway grade crossings within a business or residence district; and it shall not apply to abandoned or unused tracks."

It is claimed that a violation of this section did not constitute actionable negligence in this case since the intent of the statute was to protect bus passengers from the hazards involved at railroad crossings because of oncoming trains and the danger of collision with those trains; that the statute was not intended to protect bus passengers from being jolted because of rough railroad crossings. Appellant's contention might have been well

taken if it were not for the fact that the complaint also contains the following allegations:

"6. That on said date at the time defendant's said bus in which plaintiff was being carried to his destination in said City of East Chicago, Lake County, Indiana, as aforesaid, approached said E. J. & E. from the east, said railroad tracks and crossing were pitted with holes and breaks in the pavement and the rails extended above the paved portion between said rails so as to make said crossing dangerous.

"7. That said bus, on approaching said railroad crossing was traveling at an excessive and dangerous rate of speed, to-wit: 40 miles per hour.

"9. That said bus upon contact with said pitted and broken pavement of said railroad crossing and protruding rails, being driven at the speed aforesaid, was violently thrown up into the air, causing plaintiff to be then and there thrown violently up from his seat and upon descending striking him against the seat in front of him and against various objects and parts in said bus, and thereby suffered severe and permanent injuries as follows: to-wit: Severe contusions and bruises to his entire body; fractures of 9th, 10th, and 11th ribs on the right side; severe injuries to anterior vertebral ligaments and the bodies of the vertebrae anteriorly; that said fractured ribs resulted in a traumatic pleurisy with adhesions; suffered severe contusion to the muscles of the lumbar area, leaving a permanent myofibrositis of a traumatic nature; suffered severe injury to his intercostal nerve; suffered a violent shock to his entire nervous system; that every organ of his body was so injured that normal functioning of his body has been permanently impaired."

It is a well-known rule of practice that a plaintiff has a right to allege several acts of negligence in a single paragraph of complaint and recover upon proof of all, or any one, of said acts. *Johnnie J. Jones Exposition* v. *Terry* (1945), 116 Ind. App. 189, 63 N. E. 2d 159.

It is also generally recognized that the courts of a state will take judicial notice of its own public statutes and that it is accordingly unnecessary to plead them or to set out the contents or substance thereof. 41 Am. Jur., Pleading, §11, p. 294.

Contrary to appellant's assertion, appellee's complaint alleged more than one act of negligence. The cases which appellant has cited as supporting its position were all based upon the single allegation that there was a violation of a statute or ordinance which constituted negligence. In two of those cases demurrers to the complaints were filed and this court held in each that the demurrer should have been sustained on the ground that the injury complained of did not fall within the category of those injuries against which the statute or ordinance sought to guard. *Vuckis* v. *Terry* (1934), 98 Ind. App. 256, 183 N. E. 104; *New York, etc., R. Co.* v. *Martin* (1905), 35 Ind. App. 669, 72 N. E. 654. In the third case cited the court held that the absence of chargeable negligence rendered the complaint bad and the evidence insufficient where the plaintiff charged negligence in the violation of a statute which was not designed for his protection or benefit. *Indiana, etc., Coal Co.* v. *Neal* (1906), 166 Ind. 458, 77 N. E. 850.

In this case the jury could have found that the violation by appellant of the Indiana statutes pertaining to speed or the common-law duty to use ordinary care in regard to the speed of appellant's bus were the proximate causes of the injuries. This case is distinguished from the above-cited cases therefore in that appellee relied upon more than one allegation of negligence in his complaint.

There was in force and effect on the date of this

accident a statute of the State of Indiana relating to speed regulation, which reads as follows:

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, or vehicle or other conveyance on or near, or entering the highway in compliance with legal requirements and with the duty of all persons to use due care.

. . .

"(d) The driver of every vehicle shall, consistent with the requirements in subsection (a), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions." Burns' Ind. Stat., §47-2004.

It has been held that these rules and regulations are simply declaratory of the rules as they were previously stated and applied under the common law. *Bond, Admr.* v. *Coats* (1936), 101 Ind. App. 526, 199 N. E. 874; *Miles* v. *State* (1920), 189 Ind. 691, 697, 129 N. E. 10, 11, 12. In the latter case the court said:

"The common law required the driver to take into consideration all of the surrounding and attending conditions and circumstances, including the traffic and use of the way and the danger to life and limb and to the property of others as specifically mentioned in the statute; and that he must control his speed and regulate his conduct in driving or operating the vehicle in such a way as to comport with the manner in which a person of ordinary prudence would operate a similar vehicle under like conditions and circumstances."

It has been further stated by the Supreme Court:

"The duty to use ordinary care requires the party on whom the duty rests to consider the character of the act, undertaking, or business in which he is engaged and the probable dangers incident thereto, as well as all other existing conditions and circumstances, and in determining the means to be used, the precautions to be adopted and the care to be generally exercised in view of the probable dangers, and the surrounding circumstances, he is required to exercise such intelligence, foresight, judgment and prudence as a person possessed of ordinary intellectual endowments would exercise in doing the same thing under like conditions and circumstances." *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 526, 121 N. E. 655, 124 N. E. 737.

It also has been decided by this court that it is a violation of a duty owing to passengers for hire by a common carrier to suddenly or violently stop, jerk or jolt in such a manner which is unusual and beyond common experience if a passenger is injured thereby. *Evansville City Coach Lines* v. *Roger* (1952), 122 Ind. App. 119, 99 N. E. 2d 435, 102 N. E. 2d 504. Whether or not the conduct of the bus driver in this case measured up to the standards of ordinary care as defined by law was a question of fact to be determined by the jury. *Union Traction Co.* v. *Berry, Admr., supra.* Likewise whether or not there was any sudden jolting or jerking, which was so unusual and violent as to be beyond ordinary experience, was a question for the jury. *Evansville City Coach Lines* v. *Roger, supra.*

A verdict must be sustained if there is any legal evidence before the jury to sustain their determination. *Young* v. *Older* (1915), 183 Ind. 646, 109 N. E. 909; *Myers* v. *Murphy et al.* (1878), 60 Ind. 282; *Armstrong Cork Co.* v. *Maar* (1953), 124 Ind. App. 105, 111 N. E. 2d 82, 112 N. E. 2d 240.

The facts of this case are as follows: Early in the morning, before daylight, on February 13, 1952, appellee set out to go to work at Inland Steel Company located in Indiana Harbor. He lived in Gary and in order to get to his place of employment it was necessary to take a bus which went to East Chicago. On the way he would transfer to another bus bound for Indiana Harbor. This particular morning he boarded appellant's bus at the corner of 25th and Colfax Streets in Gary, paid his fare and sat down in the front seat on the right side of the bus. It was the long seat running parallel with the bus, next to the front door. He sat in the corner next to the door where there was a horizontal bar immediately to his right, which made "a good arm rest" (testimony of the bus driver). The bus proceeded westward on 25th Street to a grade crossing consisting of two sets of tracks, then being owned and operated by the E. J. & E. Railroad Company. There was a grade there, one side of the tracks being a little steeper than the other. Although he saw the stop sign indicating a railroad crossing, the driver did not stop. There was conflicting testimony as to the speed of the bus at this point. The appellee testified that it was going between 45 and 50 miles per hour. A witness testified that it was going at the normal rate of speed for the highway. The driver claimed he was going only six or eight miles an hour.

As the bus went over the tracks there was a "jolt" or "bump" which was felt by the other passengers on the bus. The appellee was thrown from his seat against the horizontal bar on his right side. He felt pain and shouted to the driver that he was hurt. He was pale and bent over to one side as if in pain. The driver heard him call out and asked him if there was something the matter. He received no answer, so drove

those going to Indiana Harbor. He again asked ap-into Cline Avenue, which was the transfer point for pellee if there was something the matter, and was told that when the bus crossed the railroad tracks he had been thrown against the bar in the front of the bus. Appellee was holding his side, but refused the bus driver's offer to get a doctor, stating that he would get his own. Appellee took another bus to Inland Steel Company. On arriving there he went to its Clinic where an X-ray was taken. He was advised to go home and to see his own doctor. He took a taxi home and called his wife, who left her place of employment to drive him into South Chicago where he was treated by Dr. George J. Brelias. Subsequent examinations and X-rays showed that appellee had broken two and possibly three ribs on his right side and that attending damage to nerve structure caused severe and lasting pain.

This court is of the opinion that there are sufficient allegations in the complaint that appellant's negligence was the proximate cause of appellee's injuries. From the facts set forth above, we cannot say that there was a total lack of proof on that issue. There was sufficient evidence to sustain the jury's verdict and there was no error by the trial court in overruling appellant's motion for a directed verdict.

If there is any question that the theory of the complaint was not clear, and there is any doubt of the court on appeal as to the theory adopted by the trial court, the judgment will be sustained if it is supported by evidence tending to sustain it upon any theory consistent with the pleadings and proof. The presumption is that the trial court adopted the theory which sustained the judgment rather than a theory upon which no judgment could properly rest.

*Keys* v. *McDowell* (1913), 54 Ind. App. 263, 100 N. E. 385.

Appellant here made no objection to the pleadings or to the evidence on the ground of variance. If there was a variance it could have been corrected in the court below, but no such action was taken and the amendment will be deemed to have been made on appeal. Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice,* ch. 39, §2061, comment 3, pp. 538, 539, citing authorities.

Appellant charges that the trial court erred in refusing to give appellant's Instruction No. 13. This instruction reads as follows:

> "The court instructs you that the statute referred to in the complaint and the evidence (requiring the operator of a common carrier and other vehicles to stop within a given number of feet of the crossing) is not applicable to the issues and evidence in this case. It was adopted for the purpose of protecting persons and property from being struck by approaching trains, and not for the purpose of protecting against injuries or property losses resulting from defectively maintained crossings. The plaintiff in this case is not within the class of persons which the statute is intended to protect. Therefore, whether or not the defendant's driver did or did not stop in compliance with the statute is immaterial to the issues."

Again appellant states that §47-2116, Burns' Ind. Stat., cited above, does not apply as an issue of actionable negligence as a matter of law because appellee was injured by a "bump" or "jolt," which was not the type of injury the statute was intended to prevent, nor was appellee one of the persons which the statute intended to protect. Appellant claims that the jury should have been informed of this and that tendered Instruction No. 13 should have been given by the court. We cannot agree with appellant.

In the first place, the instruction would instruct the jury "that the statute referred to in the complaint *and the evidence* . . . is not applicable to the issues and evidence in this case." The use of the words "and the evidence" could easily have misled the jury in that they could consider themselves instructed not to consider any evidence of stopping or failure to stop for any purpose, as an item of negligence, whether connected with the statute or not. This instruction was not strictly and entirely accurate and therefore it was not error to have refused to give it. That the trial court was well aware of the rule of law propounded by appellant is evident from the fact that it gave appellant's Instruction No. 9, wherein it charged the jury that there was failure of proof of the allegation in the complaint that the pavement was cracked and broken or pitted with holes.

In the second place, when the bus driver was being cross-examined on the witness stand, the following questions and answers were propounded:

"Q. And was that railroad sign visible to you up there?

"A. It is visible.

"Q. When you were riding inside that morning?

"A. It was, yes, sir.

"Q. But still you came forward and for a distance of one hundred fifty feet east of that railroad sign and until you went over the railroad tracks you didn't stop, is that right?

"A. I didn't stop after I left that bus stop, that's right.

"Q. All right. Now, hadn't sometime during the eight months or so that you had been driving, hadn't the bus company given you instructions about stopping at railroad intersections?

"A. Yes, they had.

"Q. And they told you that the law required that

the driver of any motor vehicle carrying passengers for hire or any school bus carrying any school child, or of any vehicle carrying explosive substances or inflammable liquids as a cargo or part of a cargo, before crossing at grade any track or tracks of a railroad, shall stop such vehicle within fifty feet, but not less than ten feet, from the nearest rail of such railroad and while so stopped, shall listen through an open window or door and shall look in both directions along such track for any approaching train, and for signals indicating the approach of a train. Had they instructed you of that?

"A. They had, yes, sir.

"Q. And you saw the sign that morning, you recall that?

"A. I don't recall seeing the sign, but I evidently did see it. I came right by it.

"Q. But you went on by?

"A. Pardon?

"Q. But you went on by it and you didn't stop within the distance?

"A. I guess I didn't, I mean, if it is fifty feet, I don't think that stop is quite that close to the railroad track."

It is indicated by this testimony that the driver had been instructed by appellant as to stopping at railroad crossings. He was then questioned as to whether he had been told of the law referred to, and he answered in the affirmative. There was no objection to this line of questioning by appellant. By permitting this evidence to go before the jury unchallenged, appellant cannot now on appeal insist that it was error to have allowed the allegations and proof of the statute to go before the jury for its consideration. 3 Lowe's Work's Ind. Practice, 4th Ed., §§45.7-8, pp. 78, 79; *Ross, Rec.* v. *Terre Haute, etc., Trac. Co.* (1930), 202 Ind. 698, 171 N. E. 665.

Appellant claims that the damages assessed by the jury are excessive. Appellee at the time of the injury on February 13, 1952, was a man 62 years of age, who had been employed at Inland Steel Company since 1919 and continuously for the past nineteen years. He was in good health and had a good work record. He was employed as a painter and was earning $77 a week. Prior to this time he had never suffered any injury at work or otherwise. His life expectancy was 13.82 years. After receiving the injuries complained of, as a result of the bus ride on February 13, 1952, X-rays were taken which revealed that he had fractured the 10th and 11th ribs, and possibly the 9th rib, on his right side. He complained of pain on the right side of his chest. At first, his family physician, Dr. Brelias, taped him up and then put an elastic bandage on him. He visited appellee at his home once or twice a week continuously after the injury and saw him regularly until the case was tried, which was in October, 1955. The appellee consistently complained of pain. Dr. Brelias gave him shots in an attempt to alleviate it. After remaining in bed for two months, appellee attempted to go back to work, but found he could not carry on his regular painting job because of the pain. He was put to work at light jobs, but that did not help, as the pain continued. On June 21, 1954, he entered the Methodist Hospital in Gary because of what at first was believed to be a heart attack, but was later diagnosed, by Dr. Richard G. Nilges of Gary, as being nerve root pressure of the thoracic region due to a condition affecting the spine. Salicylates and novocain injections were administered. He remained in the hospital for several weeks.

He was admitted to Mercy Hospital in Gary on October 3, 1954, because of the persistence of his complaints

of pain. There an operation was performed, being a laminectomy, where the spine is opened in the lower thoracic region. At that time the sensory nerves were sectioned, this being termed a rhizotomy. It afforded him no measure of relief from pain, and medicines were subsequently given him for relief. Dr. Nilges, who performed the operation, testified that the pain could be attributed to the fractured ribs. Dr. Brelias examined the appellee a month before the trial, in September, 1955. He stated the appellee was complaining all the time; that he believed the pain was caused from direct trauma to the nerve; that he considered referring appellee to a psychiatrist, due to the fact that he had changed mentally; that he believed the pain was genuine and would continue the rest of his life.

Dr. R. S. Yegerlehner, a physician from Kentland, testified that he examined the appellee just a few days before the trial, which was the first time he had ever seen him. He believed the appellee was suffering from an injury to the nerve trunk in the region of the 10th rib, which could have been caused by the fracture of the 9th or 10th rib. He said that such an injury could have resulted from a fragmentation as a result of the fracture, hemorrhage to the nerve sheath or pinching of the nerve because of scar tissue. He said this would cause severe pain and that this type of injury would make it more painful if he worked and would thus shorten his working span. Dr. Yegerlehner testified that there was no doubt in his mind that appellee had the pain he complained of.

There was also evidence that appellee suffered from osteoarthritis and that this could have caused the pain. There was medical testimony that there was a possibility of traumatic pleurisy or inflammation of the muscles, which could have caused the pain. From the evidence

presented, the jury could have found that the appellee broke several ribs as a result of which certain nerves in the appellee's body were so affected that he suffered intense pain from the date of the injury until the date of trial, which was a period of more than three and a half years, and that such suffering would be of a permanent nature.

The fact that the pain was subjective does not decrease its intensity or necessarily the monetary compensation which a jury may deem proper to award under the circumstances. As Shakespeare has so aptly stated:

> "There was never yet philosopher that could endure the toothache patiently, however they have writ the style of gods, and made a pish at chance and sufferance." Much Ado About Nothing, Act V, Scene I.

An injured person has always been entitled to compensation for pain and suffering, including future suffering caused by permanent injuries, where such are a direct and proximate result of negligence charged in the complaint. 9 West's Indiana Law Encyclopedia, Damages, §§61, 62, pp. 345, 346.

To warrant a reversal on the ground that the damages are excessive, it must appear that the damages assessed were so grossly and outrageously excessive as to induce the belief that they were the result of prejudice, partiality or corruption. *Swallow Coach Lines, Inc., et al.* v. *Cosgrove* (1938), 214 Ind. 532, 15 N. E. 2d 92; *Armstrong Cork Co.* v. *Maar* (1953), 124 Ind. App. 105, 111 N. E. 2d 82, 112 N. E. 2d 240, *supra.*

In 25 C. J. S., Damages, §93, p. 641, the rule as to damages is stated as follows:

> "There is no standard by which physical pain

and suffering may be measured and compensated for in money. It can only be said that an award of damages therefor should be estimated in a fair and reasonable manner, and not by any sentimental or fanciful standard, and should constitute a reasonable compensation to plaintiff on the facts disclosed by the evidence. The jury are entitled to consider the length of plaintiff's suffering, the nature of the injury, the age, health, habits, and pursuits of plaintiff."

We believe that the jury fairly and impartially passed upon the question of compensation to which appellee was entitled as damages. We can find nothing in the record which would indicate that the jury acted from improper motives. As was said by Judge Shake in *Swallow Coach Lines, Inc., et al.* v. *Cosgrove, supra,* (214 Ind. at 537, 538, 15 N. E. 2d at 95) :

"This court cannot indulge in any such extra-evidential excursions into the realm of conjecture and speculation to set aside the verdict of twelve lawful jurors, which has also received the approval of an experienced trial judge. Much of the record before us is devoted to the testimony of skilled medical men relative to the nature and extent of appellee's injuries. The evidence upon that subject is highly conflicting, but that most favorable to the appellee would reasonably sustain an award in the amount allowed. Under the limitations imposed by the rule above stated we are not able to say that the verdict is excessive."

In *Yellow Cab Co.* v. *Kruszynski* (1935), 101 Ind. App. 187, 196, 196 N. E. 136, 140, this court said:

"We must also take into consideration that the judge of the lower court had the opportunity to observe the conduct and appearance of the witnesses testifying in the cause, and was in a situation where he could best determine whether the verdict was subject to any improper influence, prejudice or partiality, and in passing upon the motion for a new trial that he had this question before him."

For these reasons we shall not disturb the judgment because of alleged excessive damages.

Appellant urges that error was committed in admitting plaintiff's Exhibit No. 3, being the Methodist Hospital bill, and plaintiff's Exhibit No. 4, being St. Mary's Mercy Hospital bill, in evidence, over appellant's objection.

From the allegations in rhetorical paragraphs 9, 10 and 12 of appellee's complaint, medical expenses and hospital bills would be pertinent to appellee's complaint and cause of action. These allegations were sufficient to inform appellant of appellee's claim. In regard to the bills in question, such expenses need not be specially pleaded where the injuries are alleged to be serious as in this case. *Shown* v. *Taylor* (1950), 120 Ind. App. 154, 88 N. E. 2d 783. The admission of plaintiff's Exhibits 3 and 4 was not error.

For the reasons set forth above, we think this case was fairly tried and decided by the trial court.

Judgment affirmed.

NOTE.—Reported in 156 N. E. 2d 902.