HAGEMANN ET AL. *v.* CITY OF MOUNT VERNON ET AL.;
HAGEMANN ET AL. *v.* CITY OF MOUNT VERNON.

[Nos. 29,496 and 29,645. Filed November 20, 1958.]

*Frederick P. Bamberger* and *Ortmeyer, Bamberger, Ortmeyer & Foreman,* of Evansville, for appellants.

*Otis B. Allyn, Steve C. Bach* and *William L. Mitchell,* all of Evansville, for appellees.

ACHOR, J.—The respective actions in the above entitled causes are related to the same subject-matter and involve many of the same issues and are therefore treated concurrently. Both actions challenge the validity of a proceeding whereby appellees by declaratory resolution under §48-2001, *et seq.*, Burns' 1950 Repl. [Acts 1905, ch. 129, p. 219] determined the necessity, and purported to condemn and award damages for certain lands of appellants, for a sewage disposal plant.

Cause numbered 29645 is an action to enjoin the appellees from taking any further steps under §48-2001, *et seq., supra,* pursuant to the declaratory resolution. The trial court denied the injunction.

In both actions the errors assigned and argued by appellants upon appeal, are as follows: (1) That the proceedings, by which the declaratory resolution was adopted and the property condemned, was invalid for the reason that the statute [§48-2001, *et seq., supra*], which authorized the proceedings, provides for a notice by publication only to the owners of land prior to the appropriation thereof by the municipality;[1] (2) that no steps had been taken in the proceedings to negotiate with appellants regarding the amount of their damages, and that if appellees were permitted

---

1. "Whenever the board of public works of any city shall desire to appropriate or condemn, for the use of such city, any property, real or personal, or to open, change, lay out or vacate any street, alley or public place within such city, including proposed street or alley crossings of railways or other rights of way, in cases where the proposed street or alley is to cross the same, it shall adopt a resolution to that effect, describing the property which may be injuriously or beneficially affected, and shall cause notice of such resolution to be published in a newspaper of general circulation published in such city, once each week for two [2] consecutive weeks. Such notice shall name a date, not less than ten [10] days after the last publication, at which such board will receive or hear remonstrances from persons interested in or affected by such proceeding. Such board shall consider modifying or rescinding its original resolution, which action shall be final and conclusive on all persons." §48-2001, Burns' 1950 Repl.

to condemn appellants' property under §48-2001, *et seq.*, *supra*, they would be denied this and other rights which are expressly granted under the general Eminent Domain Act [§3-1701, et seq., Burns' 1946 Repl.] . [Acts 1905, ch. 48, p. 59] ; (3) that the *declaratory resolution* and, therefore, the appropriation thereunder, is invalid for the reason that the description of the easement, sought to be appropriated as a right-of-way between the highway and other land condemned, is not described in said *resolution* with such certainty as to give the proceeding validity.[2]

In addition to the above issues raised in both actions, in the latter case appellants also assign as error, (4) that the damages assessed are inadequate, for the reason that the court failed to take into consideration the value of appellants' property as a business.

*One:* The question herein is whether the action under §48-2001, *et seq.*, *supra*, violates the constitutional right of due process, guaranteed to the appellants. Specifically appellants assert that condemnation under said Act violates Art. 1 §§12 and 21 of the Constitution of Indiana and the Fourteenth Amendment to the Constitution of the United States, in that such action would deprive the appellants of their property without due process (or due course) of law, for the reason that the act does not provide for personal service

---

2. Appellants now question the sufficiency of the contents of the *notice by publication* for the reason that it was not addressed to named individuals but merely "To Whom It may Concern" and for the further reason that it did not adequately describe the property sought to be appropriated. Also, appellants now challenge the sufficiency of the description of the property as contained in the personal notice served upon them. We do not approve of the form of the notices given. However, the appellants did not, in the trial court, question the contents of the notices given except as to the description of the property constituting a right-of-way to other property condemned. Therefore, our consideration of such issues is limited to those presented to the trial court.

of notice upon persons whose property is condemned, prior to the appropriation thereof. In support of their position, appellants cite the fact that the said act makes no express provision for the filing of objections to the taking after notice by personal service as provided in Section 48-2005 of the Statutes. They then cite the cases of *The Cemetery Co.* v. *Warren Sch. Twp. et al.* (1957), 236 Ind. 171, 178, 139 N. E. 2d 538, and *Mullane* v. *Central Hanover B. & T. Co.* (1950), 339 U. S. 306, 314, 94 L. Ed. 865, as sustaining their position that, in the absence of service of notice and opportunity to object to the taking, the act is unconstitutional.

In the Cemetery case, *supra,* this court correctly stated the law as follows: ". . . At some place in the proceedings, and by some method the landowner is entitled to contest the legality of the condemnation proceedings, and question the authority under which the attempt is being made to take his property . . . ."

In the Mullane case, *supra,* the United States Supreme Court stated the accepted rule regarding due process as follows: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. . . ."

This court has heretofore been called upon to consider substantially these same principles as applied to the condemnation statute here in question. In the case of *Falender* v. *Atkins* (1917), 186 Ind. 455, 459-461, 114 N. E. 965, this court stated the law as follows:

" 'Due process of law' within the meaning of the fourteenth amendment, *supra,* is not intended

to control the power of the State to determine by what process legal rights may be asserted, provided such procedure will afford reasonable notice and a fair opportunity to be heard before final determination. *Iowa Central R. Co.* v. *Iowa* (1895), 160 U. S. 389, 16 Sup. Ct. 344, 40 L. Ed. 256. . . .

". . .

". . . The sections of the act to which we have referred provide for notice to all persons interested or who may be injuriously affected, and for a day when they may be heard concerning each step to be taken by the board, beginning with notice of the adoption of the resolution, down to the final action on the assessments or awards, and for an appeal to the circuit or superior court of the county by any party who may feel aggrieved by the board's action. If, as appellant contends, this is an action for damages for property taken, or an invasion of his private right, then the act in question clearly gave him a remedy, and an opportunity to be heard before a tribunal vested with power or jurisdiction to determine his rights in the premises, and notice which the legislature has deemed sufficient. Under these circumstances we cannot say that the proceedings were not well within the principle required to constitute due process of law. *Bowlin* v. *Cochran* (1903), 161 Ind. 486, 69 N. E. 153; *Strange* v. *Board* (1909), 173 Ind. 640, 91 N. E. 242; *Hudson Tp.* v. *Smith, supra* (182 Ind. 260, 106 N. E. 359)."

In the more recent case of *Slentz et al.* v. *City of Fort Wayne et al.* (1954), 233 Ind. 226, 229, 118 N. E. 2d 484, this court also considered the constitutionality of the act now in question. In the latter case the issue of constitutionality was first presented on appeal from the board of public works to the Superior Court of Allen County. It was there asserted among other things that the act was unconstitutional for the reason ". . . that the provision of the statute making the action of the board in confirming, modifying or rescinding a resolution after hearing, as provided in the act, final

and conclusive on all persons is in violation of Article
I of Section 12 of the Constitution of Indiana."

In deciding the case this court enunciated the fol-
lowing principles of law: (1) It is not essential to due
process that an appeal from a decision of an
administrative board be provided at every step
of the proceedings for condemnation, but (2)
the legislature cannot deprive courts of their inherent
power to review such actions when they are infested
with fraud, capriciousness or illegality. This court
then construed this provision of the statute merely to
mean that in the absence of fraud, capriciousness or
illegality, the action of such municipal body is "final
and conclusive" upon the legislative question as to the
necessity for taking and that such determination can-
not again be questioned at subsequent steps in the
proceedings. In that case this court held that the
act does not presume to prohibit a review of such action
for grounds of fraud, capriciousness or illegality and
that the issue of illegality was properly presented to
the trial court on a "Complaint of Appeal" from the
action of the Board of Public Works.

It necessarily follows from the decisions in the
Slentz and Falender cases, *supra,* that, notwithstand-
ing the language of the statute [§48-2005, *su-
pra*], any issue as to the legality of the condem-
nation proceedings under the special statute here
in question, may be presented on appeal to a trial court,
as part of such proceedings. This right to judicial re-
view is significant as related to the question of due
process for the reason that the statute [§48-2003, *su-
pra*] provides for service of personal notice upon each
property owner whose land is appropriated *prior* to
final action by the board of public works, which action,
in turn, precedes "appeal" of the proceedings to a
court. Thus the owner of the property is given an

opportunity to challenge the legality. of the proceedings after personal notice is served upon him. In this manner, the right of due process, which requires reasonable notice and a fair opportunity to be heard before final determination is met. *Falender* v. *Atkins, supra* [186 Ind. 455, 460].

*Two:* Appellants assert that, having adopted the declaratory resolution, appellees were required to proceed under the Eminent Domain Act [§3-1701, *et. seq., supra*], and not under the special statute [§§48-2001, 48-2003, 48-2005, *supra*]. It is appellants' contention that the Eminent Domain Act superseded the conflicting provisions of the special act. In support of this position, appellants cite §3-1701, *supra,* which expressly provides, in part:

> "Any person, corporation or other body having the right to exercise the power of eminent domain for any public use, under any statute, existing or hereafter passed, and desiring to exercise such power, shall do so only in the manner provided in this act, except as otherwise provided herein. . . ."

A decision upon the question here presented requires an understanding regarding the history of the respective statutes. The Eminent Domain Act was enacted in 1905. It is a general act, applicable to the state and all subdivisions and agencies thereof, created by the legislature. However, the same legislature also, by separate act, established the procedure by which "any city" shall exercise the right of condemnation. [§48-2001, *supra.*]

The rule of statutory construction applicable under the above circumstances has been stated as follows:

> "General and special acts may be in *pari materia.* If so, they should be construed together. Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two

should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling." Horack's Sutherland Statutory Construction, 3rd Ed., Vol. 2, §5204, pp. 541-542. *Kingan & Co.* v. *Ossam* (1921), 190 Ind. 554, 131 N. E. 81; *Huff* v. *Fetch* (1924), 194 Ind. 570, 143 N. E. 705; *City of New Albany* v. *Lemon* (1925), 198 Ind. 127, 149 N. E. 350, 152 N. E. 723; *Starr* v. *City of Gary* (1934), 206 Ind. 196, 188 N. E. 775.

Where the same session of the legislature adopted a general law regarding the condemnation of property by eminent domain [§3-1701, *et seq., supra*], and also adopted a special law with limited application upon the same subject [§48-2001, *et seq., supra*], we must assume that the legislature intended the special law to operate as an exception to the general law, as relating to actions by cities and towns. However, in support of their position to the contrary, appellants cite the cases of *State* v. *Pollitt* (1924), 220 Ind. 593, 600, 45 N. E. 2d 480, and *Halstead* v. *City of Brazil* (1925), 83 Ind. App. 53, 57, 147 N. E. 629. Although these cases contain language which lends support to appellants' position, they are not controlling of the facts here presented. The case of Pollitt, *supra,* involved a condemnation of land by the State of Indiana through the Highway Commission. The court correctly held that the proceeding was controlled by the general Eminent Domain Act since the action did not fall within any exception to the general act, as is true in the case at bar. True, in that case, this court stated:

"The act supersedes all other statutes prescribing condemnation procedure, save one mentioned in §12 [Art. 1, §12]. The words 'or other body having the right to exercise the power of eminent

domain . . .' in §1 are broad enough to include the State or any of its administrative agencies."

However, this language must be considered in the light of the facts actually before the court. It is not controlling of the issues before us.

In the Halstead case, *supra*, the Appellate Court held that injunction would not lie against the city of Brazil to prevent it from appropriating lands for a sewage treatment plant. The action was prosecuted on the ground "that the common council of the city had 'not adopted any ordinance providing a method for the exercise of its general powers for condemnation of land.' " The allegation itself is ambiguous and, with regard thereto, this court stated: ". . . the method of procedure was provided by statute . . . and no ordinance as to the method was required." The injunction was denied on the ground that the Eminent Domain Act provided adequate remedy at law under which the condemnation proceedings could be contested. Whether or not the ruling of the court upon this issue was in error, we need not decide. Clearly appellant in the case at bar had a legal remedy under §48-2001, *et seq.*, and therefore, the injunction was properly denied.[3]

In the absence of a statute which specifically provides the procedure by which a municipality shall condemn property, it is not disputed that such proceedings shall be governed by the Eminent Domain Act. However, where, as in this case,

3. In 1943 the Sewage and Garbage Disposal Act was enacted. Notwithstanding the cases of *State* v. *Pollitt* (1924), 220 Ind. 593, 45 N. E. 2d 480, and *Halstead* v. *City of Brazil* (1925), 83 Ind. App. 53, 57, 147 N. E. 629, the act provided that "The powers of condemnation or eminent domain are hereby granted to said [Sanitary] district as provided in an act entitled 'An act concerning municipal corporations' being chapter 129 of the 1905 Session Laws of the General Assembly of the State of Indiana [§48-2001, Burns'] . . ." §48-4263, Burns' 1950 Repl.

a special act was concurrently enacted which specifically provides that a different procedure shall be followed, the municipality, having only that authority which is granted it by the state, must follow the procedure prescribed by the legislature. Horack's Sutherland Stat. Constr., 3rd Ed., Vol. 2, §5203, p. 541. *Kingan & Co.* v. *Ossam, supra* (190 Ind. 554, 131 N. E. 81). Therefore, we conclude that these proceedings were properly initiated and conducted by the appellees under §48-2001, *et seq., supra.*

*Three:* We consider whether or not in the case at bar the declaratory resolution by which appellees sought to appropriate an easement upon appellants' land as a right of way, described the easement with sufficient certainty to give the proceeding validity.[4] The land was described in the declaratory resolution as follows:

> "Also an easement for a right of way for the purpose of installing, operating, maintaining, repairing and replacing a sewer over and across a tract of land lying south of State Highway No. 69, between the lands of The Texas Company and the Sohio Pipe Line Company in Sections 7 and 18, Township 7 South, Range 13 West, said easement to include a strip of land 40 feet wide, being 20 feet on each side of the center line of a sewer which shall leave State Highway No. 69 at a point east of the bridge and lead directly to the Sewage Disposal Plant as proposed to be constructed by the City of Mount Vernon according to the plans and specifications now on file in the office of the Clerk-Treasurer of said city, which plans and specifications are, by reference made a part hereof the same as if copied herein." [P. 41 Appellants' Br.]

---

4. Appellants made no complaint regarding the sufficiency of the description of the property as contained in the personal notice of the award of damages, which notice was served following the adoption of the declaratory resolution. The complaint is directed to the sufficiency of the description contained in the declaratory resolution itself.

In the instant case the declaratory resolution, although indefinite upon its face, incorporates by reference the plans and specifications for the project in describing the location of the easement in question. These and the record in this proceeding were on file in the office of the city clerk, This procedure has been approved by the decisions of this court as a means of identifying with certainty the land described in condemnation proceedings. *Prather* v. *The Jeffersonville, Madison and Indianapolis Railroad Co.* (1875), 52 Ind. 16, 40; *Indianapolis and Vincennes Railroad Company* v. *Newsom* (1876), 54 Ind. 121; *Southern Ind. R. Co.* v. *Indianapolis, etc., R. Co.* (1907), 168 Ind. 360, 81 N. E. 65. Furthermore, the rule in this state is now well settled that the description of real estate is sufficient for condemnation purposes if the same can be determined and the land identified from the intrinsic record by one skilled in such matters, such as a surveyor or engineer. In such proceedings it is the office of a description not necessarily to fully identify, but to furnish the means by which the land may be identified with certainty. When that office is fulfilled, the description is sufficient. *Darrow* v. *Chicago, etc., R. Co.* (1907), 169 Ind. 99, 104, 81 N. E. 1081; *The German Mutual Insurance Company of Indianapolis* v. *Grim and Others* (1869), 32 Ind. 249; *Pittsburgh, etc., Ry. Co.* v. *Beck* (1899), 152 Ind. 421, 53 N. E. 439.

In the case at bar, a professional engineer stated that through the description contained in the declaratory resolution, adopted by appellee, City of Mt. Vernon, and the plans and specifications, referred to therein, the location and extent of the easement could be determined with certainty. Therefore, we conclude that the land was sufficienty identified in the declaratory resolution which incorporated, by

reference, the plans and specifications. However, the tract having been identified only by resort to plans and specifications, the judgment should have reduced the description thereof to legal terms, from which judgment, standing alone, the land could be identified as to its location, boundary and/or area and entered within the deed records of the county as notice to the public. This would seem to be a minimum requirement for identifying the land for tax and other public purposes, which is an essential function of the judgment.

*Four:* The final question presented is related to the sufficiency of the damages awarded. Appellants assert that the award is erroneous as a matter of law, for the reason that the court failed to consider and assess as damages the value of their property as a business operation. Appellants assert that by reason of this failure, the taking was in violation of Article 1, §21 of the Constitution of Indiana, which forbids the taking of property for public purpose without just compensation.

The evidence regarding appellants' business operations as related to the land appropriated, is summarized as follows: The area appropriated consists of 7.75 acres. It was part of a 10 acre tract. This 10 acre tract and a 75 acre tract across the road had for several years been used by appellants for dry feeding cattle. After the appropriation the remaining part of the 10 acre tract was not adaptable to this purpose. Half the cattle were put on the 10 acre tract and half on the 75 acre tract. Part of these cattle were raised by appellants on other farms owned by them, with no record kept regarding their cost. Part were bought and fattened. Appellants assert that half their average yearly profits from the sale of these cattle should be credited to the 10 acre tract, in the sum of $2,767.00.

Except for "the water supply, the barns and the feeding troughs and the convenience of the thing, there is no difference in that land than any other." [Tr. p. 171.]

As a general rule, it has been held that:

". . . profits derived from a busines conducted on property is too speculative, uncertain, and remote to be considered as a basis for computing or ascertaining the market value of the property in condemnation proceedings. On the other hand, the courts as a general rule accede to the view that income from property in the way of rents and profits is an element of consideration in arriving at the market value or measure of compensation to be paid for taking property in eminent domain proceedings. See annotations in 65 ALR 456.

". . . It seems proper to draw a distinction between income which represents the profits earned by a business conducted on the land in question (which would, of course, be attributable in many instances not only to the property itself but also to such other considerations as market conditions, the skill and knowledge of the proprietor of the business, etc.) and income which is attributable solely or primarily to the use of the property itself, such as rents." Annotations 134 ALR 1125-1126.

Whether on the one hand the dry feeding of live stock upon this particular tract of land constituted a business conducted *on* the property, profits from which were "too speculative, uncertain and remote" to be considered in determining the value of the land appropriated, or whether, on the other hand, the income was "attributable solely or primarily to the *use* of the property itself," was a question of fact which the jury decided adversely to the appellants. The evidence upon this issue is indefinite and conflicting and, therefore, not conclusive in support of appellants' position. The damages awarded were within the range of the evidence. This court, on

appeal, will not weigh the evidence or substitute its judgment or conclusion for that of the trial court or jury. *City of Terre Haute* v. *Myers* (1940), 216 Ind. 349, 24 N. E. 2d 698; *Sims Mtr. Transp. Lines, Inc.* v. *Davis, Admx.* (1955), 126 Ind. App. 344, 130 N. E. 2d 82; *Armstrong Cork Co.* v. *Maar* (1953), 124 Ind. App. 105, 111 N. E. 2d 82, 112 N. E. 2d 240; *Hinds, Executor, etc.* v. *McNair, et al.* (1955), 235 Ind. 34, 129 N. E. 2d 553; *Love* v. *Harris* (1957), 127 Ind. App. 505, 143 N. E. 2d 450; *Gates* v. *Petri* (1957), 127 Ind. App. 670, 143 N. E. 2d 293.

The judgment is therefore affirmed, except as to that part thereof which incompletely describes the easement appropriated in the proceedings, as follows:

> "Also an easement for a right of way for the purpose of installing, operating, maintaining, repairing and replacing a sewer over and across a tract of land lying south of State Highway No. 69, between the lands of the Texas Company and The Sohio Pipe Line Company in Sections 7 and 18, Township 7 South, Range 13 West, said easement to include a strip of land 40 feet wide, being 20 feet on each side of the center line of a sewer which shall leave State Highway No. 69 at a point east of the bridge and lead directly to the Sewage Disposal Plant as proposed to be constructed by the City of Mount Vernon according to the plans and specifications now on file in the office of the Clerk-Treasurer of said City, which plans and specifications are, by reference, made a part hereof the same as if copied herein."

And the court is ordered to modify its decree as to the description of said easement by describing the same in specific legal terms, and the court is authorized to reopen the case and hear additional evidence, solely for that purpose, if necessary.

Judgment affirmed in part and ordered modified in part.

Bobbitt, C. J., Emmert and Landis, JJ., concur.

Arterburn, J., dissents with opinion.

DISSENTING OPINION

ARTERBURN, J.—As I understand the majority opinion it holds that the only notice necessary to meet the requirements of due process in an eminent domain proceeding is that of the notice to fix the damages. In other words, a property owner from whom property is to be taken forcibly, is not entitled to due notice and a hearing on the right, authority, or capacity of the person or corporation who proposes to take it. I feel this runs counter to the fundamental constitutional concepts of due process.

The confusion in this area arises from a failure to distinguish the steps in taking of property for a public use. The first notice should issue on the right to take the property in the first instance, that is whether or not the one seeking to take the property has the legal capacity, right or authority to do so. For example, whether or not a school corporation may take cemetery property already dedicated to a public use, or whether a park board can acquire land in another county and convey it to the state, or whether or not the proposed project is within the legal authority of the person or corporation that desires to take the property. May a railroad or other utility take private property forcibly for some alien use from a private owner without giving such owner a notice and an opportunity to be heard on that question? *The Cemetery Co.* v. *Warren Sch. Twp., et al.* (1957), 236 Ind. 171, 189, 139 N. E. 2d 538; *Foltz, Van Camp Hdw., etc.* v. *City of Indpls., et al.* (1955), 234 Ind. 656, 130 N. E. 2d 650; *Joint County Park Bd.* v. *Stegemoller* (1949), 228 Ind. 103, 88 N. E. 2d 686, 89 N. E. 2d 720.

The issue of right and capacity or authority to bring the action should be distinguished from that of the issue of the reasonableness, necessity or policy of taking which cannot usually be questioned because it is primarily discretionary and legislative. Whether or not the property is actually needed for the project is not an issue and cannot be questioned in the courts.

I feel this distinction between the right or authority to take and the need or reasonableness of the taking is lost sight of in the majority opinion. The quotes and cases referred to in the majority opinion deal with the necessity or reasonablenes of the taking, not the right to take in the first instance. *Slentz et al* v. *City of Ft. Wayne* (1954), 233 Ind. 226, 118 N. E. 2d 484; *Falender* v. *Atkins* (1917), 186 Ind. 455, 114 N. E. 965.

In the Cemetery Case, *supra,* p. 189, we said:

> "To summarize, we hold a court may not inquire into the administrative determination of the propriety, reasonableness, or necessity for the taking of property by eminent domain by a proper authority, except for fraud, or where the proceeding is a subterfuge for taking property for private use. On the other hand, the courts have the duty to determine the legal authority and the limits thereof of those persons or bodies attempting to exercise the power of eminent domain."

In the case before us the only notice of the intentions to take the property of the appellants was a publication in the local newspaper of a declaratory resolution addressed "To Whom it may Concern." The notice did not mention the name of the appellant owners any place in the notice, yet appellants were the only property owners whose property was to be taken. The city officials in that small place knew the appellants who lived in the same community.

In *Walker* v. *Hutchinson* (1956), 352 U. S. 112, 1 L. Ed. 2d 178, 182, 77 S. Ct. 200, the United States

Supreme Court said with reference to such kind of notice:

"It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property. In Mullane [339 U. S. 306, 94 L. Ed. 865, 70 S. Ct. 652] we pointed out many of the infirmities of such notice and emphasized the advantage of some kind of personal notice to interested parties. In the present case there seem to be no compelling or even persuasive reasons why such direct notice cannot be given. Appellant's name was known to the city and was on the official records."

In the case before us, aside from the failure to name the appellants in the notice, by which the board assumes to acquire jurisdiction, it also lacked a proper description of the real estate to be taken. The notice referred to the easement "according to plans and specifications now on file in the office of the Clerk-Treasurer of said city." Even if the appellant was required to go to the Clerk-Treasurer's office to see if his property was described therein (as it is held every property owner would accordingly be on notice to do), when he got there he would have found no definite description. This is revealed by the fact that when the notice was later served on appellants as to damages assessed for the taking, that notice merely said, "which right of way will hereafter be more specifically located."!

The majority opinion says the description is questioned only in the first notice of the declaratory resolution as to adequacy. We ask, how could the initial notice of intentions to take certain real estate addressed "To Whom it May Concern," be sufficiently definite as to the real estate if, in a later notice, fixing the damages assessed, that notice did not even then state definitely the location of the right-of-way? The majority opinion says: ". . . These (description of real estate) and the

record in this proceeding were on file in the office of the city clerk. . . ." (p. 9 Opinion) What good would a trip to the Clerk-Treasurer's office have served in making definite the description in the declaratory resolution and notice published thereon?

We further ask, how could damages be assessed or any proper objections prepared thereto for a defense, when the property was not definitely described in the second notice assessing damages? No one can say "which said right of way will hereafter be specifically located," is any description under due process for any purpose. The fact is, both notices—that of the right to take, and that of the damages assessed—are inadequate and insufficient.

It is my view that the general notice given by the city in the newspaper by publication of the declaratory resolution, is for the purpose of advising the taxpayers generally of the city so they may object to the advisability of the city going into the proposed project as a civic improvement. It is not intended as a notice to the private property owner whose property is to be taken, and cannot stand on that basis for taking his private property with notice. Such publication where personal service may be made lacks due process under the Walker Case, *supra*.

I am personally very fearful of a rule which will permit boards and commissions and other officials quietly and sometimes secretly to enter a resolution taking a person's property without any right to defend and only the right to question the damages. That is what the opinion holds. I do not think it is due process to publish notice in a newspaper "To Whom it May Concern" without naming the landowners involved and without describing the property so the landowners can understand that their property is involved. They

should not have to make trips to city halls and other public buildings and peruse plans and other specifications with the thought in mind that they might possibly be one of the parties whose property is being taken. Too often notice by publication is used with the hope that the interested party will not see it even when named. With all the condemnation suits to be faced by the citizens of Indiana in the near future, I think they are entitled to be heard on the right to take their property first.

There is no reason why descriptions in eminent domain proceedings, where property is being taken from somebody forcibly, should not be definite and certain, so that the individual knows what they are trying to do to him, and he can determine the damages. He should not have to hunt up plans and specifications which may be changed from time to time, or depend upon descriptions tied into movable objects or landmarks, such as bridges or pipelines which may be moved.

The state and public corporations employ engineers for condemnation proceedings and they should properly describe the property involved, instead of using the sloppy method exhibited in this case.

This is not a case involving a deed between two private parties, in which the court attempts to determine exactly what was conveyed, and the same rule for determining the adequacy of the description is not applicable. This is a law-suit in which property is forcibly being taken from another person. He is entitled to adequate and definite notice of what is proposed. The rule in Indiana seems to support such a proposition. See *Southern Ind. R. Co.* v. *Indianapolis, etc., R. Co.* (1907), 168 Ind. 360, 81 N. E. 65, 13 L. R. A. (N. S.) 197; *The Indianapolis and Vincennes Railroad*

*Company* v. *Newsom* (1876), 54 Ind. 121; *Prather* v. *The Jeffersonville, Madison and Indianapolis Railroad Co. et al.* (1875), 52 Ind. 16.

The ownership of property is respected under our law. One may not be deprived of this ownership at the whim of some governmental unit and leave the owner only the right to question the damages. I deem the contrary to be the holding in the majority opinion.

> "Statutes of eminent domain being in derogation of the common law rights to property must be strictly construed, both as to the extent of the power and as to the manner of its exercise. *Kinney et al.* v. *Citizens Water, etc., Co.* (1909), 173 Ind. 252, 90 N. E. 129, 26 L. R. A. (N. S.) 195; *Westport Stone Co.* v. *Thomas* (1908), 170 Ind. 91, 83 N. E. 617." *Cemetery Co.* v. *Warren Sch. Twp. et al., supra,* 236 Ind. 171, p. 184, 139 N. E. 2d 538.

In *Cemetery Co.* v. *Warren Sch. Twp., et al., supra,* at p. 177, the appellee took the position that the Cemetery Company whose land was proposed to be taken, had no right "to show cause why the land should not be taken." We said there that the reasonableness or necessity of taking could not be questioned, but the authority or initial right to bring the action and take cemetery property for school purposes could be questioned. We said at p. 178:

> "The gist of appellee's contention is that the trial court lacked jurisdiction to consider appellant's objections. The implications of this position would seem to be at variance with the normal concept of due process. If the contention is valid it would mean that the courts are prevented from adjudicating the legal right to take property merely upon the filing of a suit with certain allegations therein, without proof, and without permitting the parties thereto to make objections, questioning the authority to bring the suit. The position of the court would thereby be reduced to a mere administrative tribunal with a mandatory duty of ordering an

appropriation and fixing the value of the property taken. The function of adjudicating the legal rights of the parties would be denied the courts. As long as the judiciary remains an effective part of our government it cannot be deprived of its proper role: that of determining the legal rights of the litigants. Likewise, every person is entitled to seek relief from oppressive actions, and that place in a law-abiding society is in the court room. At some place in the proceedings, and by some method the landowner is entitled to contest the legality of the condemnation proceedings, and question the authority under which the attempt is being made to take his property including the issue of whether or not it is a private or public purpose. *Joint County Park Bd.* v. *Stegemoller* (1950), 228 Ind. 103, 88 N. E. 2d 686, 89 N. E. 2d 720; *Foltz, Van Camp Hdw., etc.* v. *City of Indpls. et al.* (1955), 234 Ind. 656, 130 N. E. 2d 650."

The general eminent domain statute [§3-1705, Burns' 1946 Repl.] recognizes the right to make objections to the initation of eminent domain proceedings and provides therefor as follows:

"Any defendant may object to such proceedings on the ground that the court has no jurisdiction either of the subject-matter or of the person, or that the plaintiff has no right to exercise the power of eminent domain for the use sought, or for any other reason disclosed in the complaint or set up in such objections."

The statute provides for an appeal from an adverse ruling. We should not deny a party these rights by approving a narrower statute which does not meet the requirements of due process in this respect by failing to provide for a proper notice and hearing on the authority and right to take the property initially. Such a statute with such a defect is unconstitutional.

I am particularly concerned about the type of publication and the abuse to which it can lead because of

the lack of notice both to the person and as to the property to be taken. Every property owner will be bound by every notice in a newspaper addressed merely, "To Whom it May Concern," and then have to make trips to some public office to examine plans and specifications to see if his property is included therein, and if it says "which right-of-way will hereafter be more specifically located," he will be bound nevertheless. I do not believe that is sufficient notice under the due process clause of the United States Constitution.

I think the judgment should be reversed.

NOTE.—Reported in 154 N. E. 2d 33.