**Michael J. HAGEMEIER and Linda Sue Hagemeier, Appellants (Defendants Below),**

v.

**INDIANA & MICHIGAN ELECTRIC COMPANY, an Indiana Corporation, Appellee (Plaintiff Below).**

No. 1–183A33.

Court of Appeals of Indiana, First District.

Dec. 19, 1983.

Max E. Goodwin, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, Bedwell & Hicks, Sullivan, for appellants.

Henry J. Price, James E. Mahoney, Barnes & Thornburg, Indianapolis, E.D. Powell, Powell, Springer & Elmore, Sullivan, for appellee.

ROBERTSON, Presiding Judge.

Michael J. Hagemeier and Linda Sue Hagemeier (Hagemeiers) appeal the trial court's judgment condemning a right-of-way for an electricity transmission line across their property in favor of Indiana and Michigan Electric Company (I & M). Hagemeiers raise two issues on appeal arguing: 1) that I & M's complaint does not comply with Indiana's eminent domain statute, IND.CODE 32–11–1–1 *et seq.*, particularly because it contains an inadequate description of the right-of-way sought in violation of IND.CODE 32–11–1–2, and 2) that I & M's procedures for selecting the transmission line route were arbitrary because it relied on a prior study for a discontinued project instead of conducting a "fresh" study and because I & M failed to consider alternative routes.

We reverse because the description of the right-of-way in I & M's complaint is insufficient to satisfy I.C. 32–11–1–2.

I & M's complaint in relevant part states:

4. For the purpose of erecting, constructing, using, operating, maintaining, repairing, and renewing a portion of said 765,000-volt electrical transmission line, it is necessary for plaintiff to take, appropriate, and make use of the right-of-way and easement hereafter specifically described in, over, through, and across a portion of .the above-described parcel or tract of land, with the location, general route, width, and termini of said right-of-way and easement, and the rights thereunto belonging, being as follows, to-wit:

A right-of-way and easement in, over, through, and across the above-described real estate more particularly described as follows:

A strip of land 200 feet in width extending 100 feet on each side of a centerline described as follows:
[The centerline is then described.]

\* \* \* \* \* \*

Together with the right vested in Indiana & Michigan Electric Company (hereinafter called Company) its successors and assigns, to place, erect, maintain, inspect, repair, and renew on the above-described right-of-way (1) metal structure with crossarms, conductors, and other fixtures; the right to erect, operate, maintain, inspect, repair, renew, add to the number of, and relocate wires and cables upon said structure and across, through, and over the above-described right-of-way; *the right to cut and remove from the above described right-of-way and the lands of the owners adjoining the same on either side any trees, overhanging branches, brush, undergrowth, or other obstructions which might endanger the safety or interfere with the erection, maintenance, operation, or use of said structure, crossarms, fixtures, wires, or cables;* the right to use said right-of-way for access to and from any parts of said right-of-way and any lands and rights-of-way of Company adjoining the same for the enjoyment of the rights of Company therein; ... and the right to remove, at any time, said structure, crossarms, fixtures, wires, or cables erected upon, over, through, or across the above-described right-of-way. (emphasis added.)

The focal point of Hagemeiers' argument is the emphasized language in I & M's complaint pertaining to the right to cut and remove trees and other obstructions from land adjoining the right-of-way. Hagemeiers argue it is impossible to determine the exact width of I & M's easement because although the complaint specifies a width of 200 feet, with 100 feet on each side of the centerline, the language concerning the right to remove obstructions on adjacent lands clearly shows I & M intends to exercise control over an area greater than 200 feet in width. Hagemeiers contend it is impossible to determine the extent of these additional rights and therefore conclude the complaint is inadequate in light of I.C. 32–11–1–2.

I.C. 32–11–1–2 reads:

32–11–1–2 [3–1702]. Condemnation proceedings—Parties—Complaint—Contents —Venue.—If such a person, corporation or other body shall not agree with the owner of the land or other property or right, or with such guardian, touching the damages sustained by such owner, as provided in section 1 [31–11–1–1] of this chapter the person, corporation or other body so seeking to condemn may file a complaint for that purpose in the office of the clerk of the circuit or superior court of the county where such land or other property or right is situated. Such complaint shall state:

(1) The name of the person, corporation, or other body desiring to condemn such lands or other property or right, who shall be styled plaintiff;

(2) The names of all owners, claimants and holders of liens on the property or right, if known, or a statement that they are unknown, who shall be styled defendants;

(3) The use the plaintiff intends to make of the property or right sought to be appropriated;

(4) *If a right-of-way be sought, the location, general route, width and termini thereof;*

(5) A specific description of each piece of land sought to be taken, and whether the same includes the whole or only part of the entire parcel or tract. And in all cases where land is sought to be condemned by the state or by a municipal corporation for a public use, which confers benefits on any lands of the owner, a specific description of each piece of land to which the plaintiff alleges such benefits will accrue. Plats of lands alleged to be affected may accompany such descriptions; and

(6) That such plaintiff has been unable to agree for the purchase of such lands or interest therein or other property or right with such owner, owners or guardians, as the case may be, or that such owner is insane or under the age of eighteen [18] years, and has no legally appointed guardian, or is a nonresident of the state of Indiana. All parcels lying in the county, and required for the same public use whether owned by the same parties or not, may be included in the same or separate proceedings at the option of the plaintiff; but the court or judge may consolidate or separate such proceedings to suit the convenience of parties and the ends of justice. The filing of such complaint shall constitute notice of such proceedings to all subsequent purchasers and persons taking encumbrances of the property, who shall be bound thereby. [Acts 1905, ch. 48, § 2, p. 59; 1935, ch. 76, § 1, p. 228; 1973, P.L. 23, § 25; 1982, P.L. 187, § 166.]

(Emphasis added.)

In determining whether a complaint sufficiently described the right-of-way sought to satisfy the statute, Indiana's courts have adopted the following test:

> The act of 1905 only requires that the real estate sought to be appropriated be described. It was not necessary therefore to describe in the complaint any part of appellant's land, except that which appellee sought to appropriate. It is not the office of a description to identify the land, but it is to furnish the means of identification. The description of real estate in a complaint in a case like this is sufficient, if it will enable one skilled in such matters to locate it. (citations omitted.)

*Darrow v. Chicago, L.S. & S.B. Ry. Co.,* (1907) 169 Ind. 99, 81 N.E. 1081, 1082.

This standard has been reiterated over the years. *Stone v. Public Service Company of Indiana,* (1973) 157 Ind.App. 328, 300 N.E.2d 121; *Hagemann v. City of Mount Vernon,* (1958) 238 Ind. 613, 154 N.E.2d 33.

█  It is readily apparent that the emphasized language in I & M's complaint does not contain criteria which would enable a surveyor to determine the extent of its rights to clear vegetation and other obstructions from Hagemeiers' lands adjoining the easement. However, despite the long life of our eminent domain statute and the standard used to test the sufficiency of a condemnor's complaint in relation to I.C. 32–11–1–2, we have not found Indiana cases which dealt with a condemnor's attempt to exercise rights outside a specified easement. There are cases such as *Jones v. Indiana Power Co.,* (1922) 192 Ind. 67, 135 N.E. 332, where our supreme court upheld the sufficiency of a complaint that gave the condemnor the right to cut trees, but the right was limited to thirty feet on either side of the centerline which was specifically described. The extent of the right sought was clear. I & M offers several cases from other jurisdictions and it argues these cases support the idea that a utility can condemn the right to clear various obstacles from lands outside a specified easement. We find these cases unpersuasive.

First, I & M refers to federal cases in which utilities were allowed to condemn the right to cut "danger trees". In *United States v. An Easement and Right of Way, Etc.,* (M.D.Tenn.1960) 182 F.Supp. 899, 901, the court upheld the TVA's condemnation petition which included the right to cut "danger trees". In response to the landowners' objections that the petition was too indefinite for them to ascertain the extent of rights sought by the TVA, the court held that the term "danger trees" had been specifically defined in federal cases and that this definition could be applied to the particular case. The underlying case in which "danger trees" was defined is *U.S. v. Russell,* (E.D.Tenn.1948) 87 F.Supp. 386. In *Russell,* the TVA sought to condemn the right to cut trees beyond the right-of-way which would strike within five feet of its transmission line if they fell. In response to the landowners' objections that the TVA's petition was vague and uncertain, the court upheld the petition and based its decision on the TVA's statutory authority

to take whatever interest it deemed necessary. The court also addressed the issue in terms of damages and whether the landowners were entitled to a single award or future compensation.

I & M's complaint, unlike the TVA's complaint, does not contain a term of art for the right it seeks. Also, Indiana's statute is specific in its requirements and therefore, limits any analogy which can be drawn between the "danger trees" cases based upon federal law and the case at bar. Additionally, "danger trees" is not the definitive term that the court in *United States, supra* perceived. Even if we were to adopt the term, it would not enable a surveyor to determine the location of I & M's easement in compliance with I.C. 32–11–1–2.

Secondly, I & M refers us to cases involving secondary easements, specifically *Virginia Electric and Power Company v. Coleman,* (1971) 212 Va. 171, 183 S.E.2d 130. In *Virginia Electric,* the court upheld the utility's right to remove trees which would come within ten feet of the transmission line if they fell. The court held that the right to cut trees outside the specified thirty foot wide right-of-way was a secondary easement which necessarily attached to the primary easement. This case is based upon a case involving a secondary easement of ingress and egress, *Virginia Electric and Power Co. v. Webb,* (1954) 196 Va. 555, 84 S.E.2d 735. I & M argues Indiana has recognized the concept of a secondary ingress-egress easement and draws an analogy between the Virginia case and *Moore v. Indiana & Michigan Electric Co.,* (1950) 229 Ind. 309, 95 N.E.2d 210. In *Moore,* our supreme court held that the utility company had a right to condemn an ingress and egress easement to reach its transmission line right-of-way. The court stated the utility company would have a right-of-way by necessity to reach the line.

We do not find the Virginia court's analogy, which is essentially I & M's argument, persuasive even in light of *Moore, supra.* The right of ingress and egress involves the right to pass over a party's land rather than the more extensive right to at least partially control and alter it as sought by I & M. Also, the concept of a secondary easement by necessity is a common law concept, *Easements and Licenses,* 25 Am.Jur.2d § 35 (1966), which has been altered in this situation by our eminent domain statute's specific requirements as interpreted by our courts. *Darrow v. Chicago, L.S. & S.B. Ry. Co., supra; Stone v. Public Service Company of Indiana, supra.* Our statute stands in marked contrast to other statutory schemes such as Alabama's where the statute specifically gives the utility the right to cut timber outside its easement. *Wiggins v. Ala. Power Co.,* (1926) 214 Ala. 160, 107 So. 85. Given this background, even if a utility in Indiana can acquire an ingress-egress easement by necessity, the statutory requirements applicable to the actual right-of-way for a transmission line must prevail in relation to the utility's right to clear the condemnees' land.

The trial court's decision is reversed because it was contrary to law.

Judgment reversed.

NEAL, J., concurs.

CONOVER, P.J., concurs (participating by designation).