## A04A2392. MOSTELLER MILL, LTD. v. GEORGIA POWER COMPANY.

(609 SE2d 211)

JOHNSON, Presiding Judge.

On May 30, 2003, Georgia Power Company filed a petition to condemn an easement 150 feet wide for an electric transmission line across three tracts of land containing approximately 800 acres and owned by Mosteller Mill, Ltd. in Bartow County.[1] A special master appointed by the trial court conducted a hearing and received evidence concerning, among other things, the need for the easement and the value of the property involved. Following the hearing, the special master returned an award of $134,100 as compensation for the easement to be acquired and consequential damages to the remainder of Mosteller Mill's property. Mosteller Mill filed a notice of appeal and exceptions to the special master award, seeking a review of rulings made by the special master as to certain nonvalue issues and seeking a jury trial on the value of the taking. The trial court held a hearing on the exceptions, denying ten of the thirteen exceptions. However, the trial court found that Georgia Power had failed to consider certain environmental and historical resources on Mosteller Mill's property. The trial court set aside the special master award and set another special master hearing.

Ten witnesses, nine of whom were qualified as experts, testified at the second special master hearing. Following the hearing, the special master entered a 13-page revised award, concluding as follows:

> While the routing of any 500 kV transmission line will likely affect certain environmental and historical resources, the Special Master finds that, based on the evidence and testimony presented in [the second hearing], which was not presented in [the first hearing], the Condemnor fairly and reasonably evaluated the effect of this line on these resources.

The special master awarded $134,000 as compensation and recommended that the easement be condemned upon payment of that sum into the court's registry. Mosteller Mill again filed a notice of appeal and exceptions to the revised award. The trial court conducted a hearing on Mosteller Mill's exceptions to the revised award and denied the exceptions. The trial court specifically found that the maintenance clause in the condemnation petition did not constitute a vague and indefinite appropriation of the property because the

---

[1] The easement area for the three tracts totals approximately twenty-one acres.

"rights acquired must be exercised for the maintenance of the electric transmission lines." According to the trial court, "Specification of particular activities necessary thereto do not constitute an excessive taking because there is the limitation that it must be necessary for the maintenance of the lines." Mosteller Mill filed an interlocutory appeal in this Court, which we granted. For the reasons which follow, we reverse the trial court's order.

1. Among other issues, the issue of first impression presented in this condemnation case is the extent to which a utility may, by perpetual easement, obtain the right to go onto nonspecific and unidentified lands adjacent to its transmission line easement in order to "cut away, remove and dispose of dead, diseased, weak or leaning trees on lands adjacent thereto [the condemned property] which may now or hereafter, in falling, strike the conductors of said lines. . . ." The parties describe this as a "danger tree" maintenance easement. Mosteller Mill's position is that Georgia Power must either take an interest in the lands it may use for maintenance — and pay compensation for the land — or not condemn the land at all. We agree.

The condemnation petition at issue here includes a nonspecific and undefined "danger tree" maintenance easement. Specifically, the condemnation petition allows Georgia Power to enter Mosteller Mill's property and cut away, remove and dispose of dead, diseased, weak or leaning trees which, in Georgia Power's sole judgment, may "now or hereafter" fall and strike Georgia Power's transmission line conductors. This "secondary easement" seeks the unlimited right to maintain and remove timber adjacent to the transmission line easement without restrictions, qualifications or limitations. Yet the secondary easement fails to describe the condemned land for maintenance with the required specificity to convey an easement in land.

Georgia Power contends that the danger tree maintenance provision imposes specific conditions on Georgia Power, authorizing removal only if (1) the tree is dead, diseased, weak or leaning, (2) the tree is "adjacent to" the easement, and (3) the tree, in falling, would strike the conductors. Georgia Power further notes that if all these conditions are met, then the condemnation petition requires that Georgia Power must pay Mosteller Mill the fair market value of any merchantable timber cut as a result of the danger tree maintenance provision. These arguments do not excuse Georgia Power from describing the condemned land for maintenance and compensating Mosteller Mill for the condemned land.

While Georgia has not addressed the specificity requirement as applied to "danger tree" maintenance easements, the General Assembly has mandated that a condemnation petition must set forth "[t]he

property or interest to be taken or damaged."[2] The Supreme Court of Georgia has consistently construed this Act to mean that a petition to condemn an easement "must describe the easement to be acquired with the same degree of definiteness as is required in a deed to land."[3] The condemnation proceeding operates as a purchase of the land or an interest therein for a certain sum, and Mosteller Mill is entitled to have an accurate, definite description of the property it is to lose in this transaction. Nothing must be left open to the judgment or interpretation of another, not even a court. Without this, the owner of the property cannot know what portion of his land is required, the special master cannot know what damage to apprise, and the petitioner cannot know the precise boundaries of the land so as not to trespass on property not acquired.

A review of the condemnation petition in the present case shows that Georgia Power has specifically described the transmission line easement. However, Georgia Power has not sufficiently described the lands Georgia Power wishes to condemn to maintain those transmission lines. The right to "cut away, remove and dispose of dead, diseased, weak or leaning trees . . . which may now or hereafter, in falling, strike the conductors" conveys no idea of the extent of the contemplated invasion. It is not enough in a proceeding to condemn an interest in land for public purposes to describe the interest sought to be acquired so vaguely as to leave it dependent upon the undisclosed opinion of the condemning party as to the quantum of the interest which it may be deemed necessary to take. In addition, Georgia Power has no right to damage Mosteller Mill's property without a taking that requires just compensation to the injured landowner.[4]

There are a number of foreign authorities which have addressed a condemnor's attempt to exercise rights outside a specified easement. Many of these cases require petitions for condemnation containing such clauses to be dismissed for lack of sufficient specificity.[5] These foreign cases are sound, logical and persuasive, and we adopt their reasoning. We understand the need for a "danger tree" maintenance easement. However, if Georgia Power wants a maintenance easement to clear danger trees in the vicinity of its transmission

---

[2] OCGA § 22-2-102.2 (2).

[3] *City of Atlanta v. Airways Parking Co.*, 225 Ga. 173, 178 (4) (167 SE2d 145) (1969); *B. & W. Hen Farm v. Ga. Power Co.*, 222 Ga. 830, 831 (2) (152 SE2d 841) (1966); *Gunn v. Ga. Power Co.*, 205 Ga. 85, 86 (52 SE2d 449) (1949).

[4] See *MARTA v. Trussell*, 247 Ga. 148, 150-152 (1) (273 SE2d 859) (1981).

[5] See *Arkansas Power & Light Co. v. Potlatch Forest, Inc.*, 707 SW2d 317 (Ark. 1986); *Hagemeier v. Indiana & Michigan Elec. Co.*, 457 NE2d 590 (Ind. App. 1983); *Florida Power Corp. v. Griffin*, 144 S2d 104 (Fla. App. 1962).

lines, it should describe this easement with the required specificity necessary to obtain an easement in Georgia, and it should compensate Mosteller Mill for the additional maintenance easement on its land. Georgia Power can either do this in its original condemnation petition or wait until such a time as the right to enter for the purpose of removing future danger trees is necessary, and then file a specific legal description of the particular land sought for the maintenance easement. Due process requires no less than such a description as a safeguard to the rights of all concerned. The trial court erred in denying Mosteller Mill's exceptions to the revised special master award.

2. Regarding the transmission line easement, Mosteller Mill claims the trial court erred by allowing Georgia Power to condemn Mosteller Mill's property without an adequate assessment of the unique environmental and historical issues affecting Mosteller Mill's real property. Specifically, Mosteller Mill argues that Georgia Power failed to show that it adequately considered the availability and feasibility of alternate routes, that such alternate routes were the subject of environmental assessments and that such assessments revealed that the alternate routes considered for the transmission line would be as affected, or more so, by the existence of the transmission line. We find no error.

Although the trial court initially found that Georgia Power had failed to show that it had considered certain environmental and historical resources on Mosteller Mill's property, the court subsequently decided, after reviewing the record developed during the second special master's hearing, that Georgia Power had identified these resources and had taken steps to protect them. Specifically, the trial court made the following findings regarding the environmental and historical characteristics of Mosteller Mill's property, which had given rise to the earlier remand to the special master:

1. Regarding the natural spring on Mosteller Mill's property, the trial court found that "[a]t the remand hearing the evidence was more fully developed, demonstrating that the Georgia Power Company had identified this resource and made a deviation in the line to avoid direct contact with that site." In addition, the trial court noted that Georgia Power had proposed certain mitigation measures that would adequately protect the spring.

2. With regard to the endangered plant species known as the Tennessee yellow-eyed grass, the trial court ruled that Georgia Power had demonstrated that this species "has been carefully considered, and its existence is adequately protected."

3. On the issue of historical resources, the trial court found that "substantial studies concerning environmental consequences" and an inspection by a professional archaeologist and historical specialist had been made. The trial court concluded that the evidence established that the transmission line would have a minimal impact to the esthetic value of the historical site.

In addition, the record shows not only that Georgia Power considered alternate routes for the transmission line, but also that Georgia Power evaluated the environmental and historical resources on Mosteller Mill's property before filing the condemnation proceeding for the route ultimately selected and, in fact, altered the original route to avoid a direct impact on these resources. This enumeration of error lacks merit.

3. Mosteller Mill also contends the trial court abused its discretion by failing to dismiss the petition to condemn because Georgia Power failed to establish a prima facie case showing the necessity of the electronic transmission line at the special master hearing. According to Mosteller Mill, the only evidence introduced by Georgia Power regarding the necessity of the transmission line was inadmissible hearsay. The evidence came from an individual who was not involved in the necessity determination and who did not author the report regarding necessity. We find no error.

The witness who testified regarding the necessity of the transmission line was qualified as an expert in transmission line planning at both hearings before the special master. He testified that he was familiar with the transmission line at issue, that he had reviewed the transmission planning studies for the area in which the proposed line is to be built, and that he had consulted with other transmission engineers in his department who prepared those studies. Where an expert personally observes data collected by another, his opinion is not objectionable merely because it is based, in part, on the other's findings.[6] In addition, the witness also testified that after the trial court remanded the case for further hearing, he conducted his own study and verified his earlier conclusion that the transmission line is needed by 2007 to provide safe and reliable electric service to customers in north Georgia. Moreover, Georgia law provides that the condemnor is the exclusive judge of necessity in the condemnation of

---

[6] See *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456, 457 (1) (475 SE2d 188) (1996).

private property for public purposes.[7] This enumeration of error lacks merit.

*Judgment reversed. Smith, P. J., and Phipps, J., concur.*

DECIDED JANUARY 18, 2005.

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert, Eric C. White*, for appellant.

*Troutman Sanders, Douglas A. Henderson, Donald W. Janney, Hugh B. Pettit III*, for appellee.