A05A0725. GEORGIA 400 INDUSTRIAL PARK, INC. et al. v. DEPARTMENT OF TRANSPORTATION.

(616 SE2d 903)

PHIPPS, Judge.

On April 9, 2004, the Georgia Department of Transportation (DOT) filed a petition and declaration of taking pursuant to OCGA § 32-3-1 et seq. to acquire for transportation purposes 0.741 acre of land, the right to dismantle and remove a building situated partly on the condemned land and partly on adjacent land not condemned, and various easements, including a temporary work easement to enter the land not condemned for the purpose of dismantling and removing the building. By that date, the DOT had paid its estimation of just and adequate compensation into court.[1]

Georgia 400 Industrial Park, Inc., Joshua R. Duncan, and the Billiard Connection, Inc. (collectively "Condemnees") filed a motion pursuant to OCGA § 32-3-11 to set aside, vacate, and annul the declaration of taking. After a hearing, the trial court denied the motion.

---

[1] See OCGA § 32-3-7.

In this interlocutory appeal, Condemnees contest the denial of that motion. They argue that the declaration of taking failed to provide a sufficient description for the temporary work easement and that the DOT failed to follow certain federal and state guidelines in instituting the condemnation proceedings. Their first argument compels reversal of that part of the trial court's ruling pertaining to the temporary work easement. Their second argument demonstrates no basis for reversal. Therefore, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

1. Condemnees argue that the declaration of taking failed to provide a sufficient description for the temporary work easement and that the trial court therefore erred by not setting aside that portion of the declaration of taking pertaining to that easement. Condemnees further claim that, without a sufficient description, the boundaries of the easement were not established and therefore the DOT's estimation of just and adequate compensation could not have accurately appraised their loss.

OCGA § 32-3-6 (b) requires that a declaration of taking contain or have annexed to it, among other things, a "description of the lands taken sufficient for the identification thereof" and a "statement of the estate or interest in the lands taken for public use." The Supreme Court of Georgia has held consistently that a condemning body seeking to acquire an easement must describe the easement with the same degree of definiteness required in a deed to land.[2] And this court has stated,

> The condemnation proceeding operates as a purchase of the land or an interest therein for a certain sum, and [a condemnee] is entitled to have an accurate, definite description of the property it is to lose in this transaction. Nothing must be left open to the judgment or interpretation of another, not even a court. Without this, the owner of the property cannot know what portion of his land is required, the special master cannot know what damage to apprise, and the petitioner cannot know the precise boundaries of the land so as not to trespass on property not acquired.[3]

In describing the temporary work easement at issue, the declaration of taking sets forth,

---

[2] See *City of Atlanta v. Airways Parking Co.*, 225 Ga. 173, 178-181 (4) (167 SE2d 145) (1969); *B. & W. Hen Farm v. Ga. Power Co.*, 222 Ga. 830, 831 (2) (152 SE2d 841) (1966); *Gunn v. Ga. Power Co.*, 205 Ga. 85, 86 (52 SE2d 449) (1949).

[3] *Mosteller Mill, Ltd. v. Ga. Power Co.*, 271 Ga. App. 287, 289 (1) (609 SE2d 211) (2005).

A temporary work easement is condemned for the right to enter upon the adjacent lands not condemned for the limited purpose of effectuating removal of a building acquired herein; and the work of removing this building shall be done in an expeditious manner with as little disruption to the remainder as is practicable under the circumstances. The easement will begin on the date possession is granted and continue until the building is removed or until January 31, 2007, whichever comes first, at which time said easement will expire. Said building being shown on the attached plats marked Annex 1-A and is labeled "BLDG."

The referenced plat does not depict a temporary work easement.

We agree with Condemnees that the trial court erred in determining that this language describes the temporary work easement with the required specificity.[4] Among other things, it provides neither the width of the easement nor any limitation regarding a pathway which must be utilized when traversing the land not condemned. It starkly leaves the boundaries of the temporary work easement to be set by those hired by the DOT to dismantle and remove the building. Despite the DOT's claim that "some of the relevant factors might not be discernible until the demolition crew arrives at the work site and begins work," "[i]t is not enough in a proceeding to condemn an interest in land for public purposes to describe the interest sought to be acquired so vaguely as to leave it dependent upon the undisclosed opinion of the condemning party as to the quantum of the interest which it may be deemed necessary to take."[5] The DOT argues that the description contains a temporal limitation, but that limitation conveys not even a hint of the extent of the physical invasion contemplated.[6] Because the aforementioned language failed to describe sufficiently the temporary work easement, the trial court erred in

---

[4] See *Airways Parking Co.*, supra at 178-181 (4); *B. & W. Hen Farm*, supra at 831 (2) (finding that a notice of the intention to acquire the right of ingress and egress on and over the condemnee's land, described only as being "the nearest and most practical route, using existing roads as far as possible" to and from the strip on which the condemnor sought to locate its transmission line, was insufficient); *Gunn*, supra at 87 (description of easement, omitting width of the right-of-way or any key as to such width, failed to sufficiently describe the land interest sought to be condemned); *Mosteller Mill, Ltd.*, supra at 288-290 (1) (finding that the right to "cut away, remove and dispose of dead, diseased, weak or leaning trees . . . which may now or hereafter, in falling, strike the conductors . . ." lacks the required specificity to convey a maintenance easement).

[5] *Mosteller Mill, Ltd.*, supra at 289.

[6] See id. at 288-289.

refusing to set aside that portion of the declaration of taking purporting to vest title of the temporary work easement in the DOT.[7]

The DOT argues that, even if the trial court so erred, the issue is moot because during the pendency of this appeal, the building was dismantled and removed and thus the temporary work easement has expired by its own terms.[8]

A condemning body may acquire property for transportation purposes through the declaration of taking method set forth in OCGA § 32-3-1 et seq. or through various other methods, such as the special master procedure, provided in Title 22 of the Code.[9] Under the declaration of taking method, which was used here, title to the property vests in the condemnor once the condemnor files its declaration of taking and deposits into the court's registry the sum it has estimated as just and adequate compensation.[10] In seeking relief from the temporary work easement, Condemnees sought and obtained interlocutory review of the denial of their motion to set aside the declaration of taking. But the mere appeal from an order denying such motion, without further application for an interim order of supersedeas, did not impose any judicial restraint upon the DOT's activities nor prohibit execution of the matter sought to be enjoined.[11] "The burden rests upon the appellant[s] to obtain such order as will protect [their] rights and preserve the status quo during the pendency of the appeal."[12] Condemnees cite this court to no such order.

Nevertheless, we reject the DOT's argument that the issue is moot.[13] "The possibility of a condemnor reaping a benefit from having filed a faulty declaration of taking should be avoided."[14] Here, although the status quo was not maintained with regard to the DOT's traversing the tract of land not condemned, the essence of Condemnees' contention — that the loss related to the temporary work easement was not accurately apprised by the DOT's estimation — is not moot.

---

[7] *Airways Parking Co.*, supra at 181 (in the absence of a definite description, a trial court errs in not enjoining a condemnation); *B. & W. Hen Farm*, supra at 831 (1) (the remedy of the landowner is to apply to a court of equity to enjoin illegal proceedings); *Gunn*, supra at 87.

[8] See generally *Dean v. City of Jesup*, 249 Ga. App. 623, 624 (1), (2) (549 SE2d 466) (2001) (if reversal of a trial court's judgment is of no practical benefit to the parties, any issues raised on appeal are rendered moot).

[9] *City of Atlanta v. Yusen Air & Sea Service Holdings*, 263 Ga. App. 82, 83 (1) (587 SE2d 230) (2003).

[10] OCGA § 32-3-7 (a); *Yusen*, supra.

[11] *Padgett v. Cowart*, 232 Ga. 633, 634 (208 SE2d 455) (1974); *Clarke v. City of Atlanta*, 231 Ga. 84 (200 SE2d 264) (1973); see OCGA § 9-11-62 (a), (c).

[12] *Clarke*, supra at 84-85 (citations and punctuation omitted).

[13] Cf. *Padgett*, supra; *Clarke*, supra.

[14] *Dorsey v. Dept. of Transp.*, 248 Ga. 34, 37 (279 SE2d 707) (1981).

The record shows that Condemnees were dissatisfied with the DOT's estimation of just and adequate compensation, and therefore each filed a notice of appeal to a jury trial within 30 days of service of the petition and declaration, citing OCGA § 32-3-14. "After the notice of appeal has been filed as provided in Code Section 32-3-14, it shall be the duty of the court . . . to cause an issue to be made and tried by a jury as to the value of the property or interest taken and the consequential damages to property or interests not taken. . . ."[15] Furthermore, OCGA § 32-3-19 (a) provides that the jury's verdict "may be molded under the direction of the court so as to do complete justice." Most pertinent to the issue raised by this contention is OCGA § 32-3-17.1, which authorizes the trial court to order a condemnor to amend a defective declaration of taking.[16] That Code section provides in relevant part,

> All questions of law arising upon the pleadings or in any way arising from the cause, subsequent to the filing of the declaration of taking and the deposit of the fund, and subsequent to the filing of the notice of appeal, if any, shall be passed on by the presiding judge who may, from time to time, make such orders and give such directions as are necessary to speed the cause, and as may be consistent with justice and due process of law.

Noting the immediate vesting of title to the land interests in the condemnor upon the filing of the petition and the payment of compensation monies into court, the Supreme Court of Georgia has ruled that, "to ensure due process to the property owner," the condemning body must strictly conform to the requirements of OCGA § 32-3-1 et seq.[17] And this court recently reiterated that due process requires a condemnee to be provided a legally sufficient description of its land interest sought to be acquired.[18]

Condemnees argue that "[the DOT] should be required to advise the trial court of the total amount of time taken to exercise the 'temporary work easement,' and the area of [the] land used to remove the building, and pay [Condemnees] accordingly." We agree, and

---

[15] OCGA § 32-3-16 (a).

[16] *Dorsey,* supra.

[17] Id.; *Yusen,* supra; OCGA § 32-3-7 (b) (nothing in that Code section shall be construed so as to deprive the owner of the property or interest of due process of law as guaranteed by the Constitutions of Georgia and of the United States).

[18] See *Mosteller Mill, Ltd.,* supra at 289-290; accord *MARTA v. Trussell,* 247 Ga. 148, 150 (1) (273 SE2d 859) (1981) (condemning body did not have power to damage property without a constitutional "taking").

therefore reverse that part of the trial court's ruling pertaining to the temporary work easement, and remand this case with instruction to the trial court to order the DOT to amend the declaration of taking to provide an accurate and legally sufficient description of the land it traversed, along with the period of time it was used, for purposes of determining the value of the land taken or consequential damages to land not taken.[19]

2. Condemnees contend that the trial court erred by failing to set aside the declaration of taking, claiming that the DOT failed to adhere to certain provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act (the URA)[20] and the Georgia Relocation Assistance and Land Acquisition Policy Act.[21]

(a) Regarding the URA, Condemnees claim that the DOT violated 42 USC § 4651, which provides steps to be followed by federal agencies seeking to acquire land.[22] OCGA § 32-8-1 (b) provides that, in acquiring real property for a federal-aid project, such as the one underlying the condemnation in this case, "[the DOT] shall be guided to the greatest extent practicable" by the land acquisition policies in the URA.

However, "[t]he provisions of [42 USC § 4651] create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation."[23] "The provisions of 42 USC § 4651 do not . . . create a private right of action in landowners. Instead, the section is no more than a statement by Congress of what it perceives to be the preferred method of dealing with landowners when the government wants to acquire their land."[24] Because the URA vests no private right of action in Condemnees, they cannot rely upon a violation of it as a basis for setting aside the declaration of taking.[25]

(b) The Georgia Relocation Assistance and Land Acquisition Policy Act provides procedures to be followed by state agencies in acquiring property for federal-aid works projects.[26] Condemnees contend the DOT violated OCGA § 22-4-9, which sets forth procedures for public entities acquiring real property for any federal-aid public works project. However, "OCGA § 22-4-9 does not create a private right of action in favor of a [Condemnee], but merely addresses policies that should guide state agencies when they acquire

---

[19] See *Dorsey*, supra.

[20] 42 USC § 4601 et seq.; see also OCGA § 32-8-1 (b).

[21] OCGA § 22-4-1 et seq.

[22] See *Benton v. Savannah Airport Comm.*, 241 Ga. App. 536, 539 (2) (525 SE2d 383) (1999).

[23] 42 USC § 4602 (a); see *Benton*, supra.

[24] *Benton*, supra (footnote omitted).

[25] Id.

[26] Id.

real property for federal-aid projects."[27] Because the Georgia Relocation Assistance and Land Acquisition Policy Act therefore vests no private right of action in Condemnees, they cannot rely upon a violation of it as a basis for setting aside the declaration of taking.[28]

Thus, the trial court did not err as contended.

*Judgment affirmed in part and reversed in part and case remanded. Andrews, P. J., and Mikell, J., concur.*

DECIDED JULY 1, 2005.

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert, Eric C. White,* for appellants.

*Thurbert E. Baker, Attorney General, Mark Weinstein,* for appellee.